

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

**08CV2912**
**JUDGE COAR**
**MAGISTRATE JUDGE KEYS**

MARIO K. KASALO, )
)
    PLAINTIFF, )
)   Civil Action No.____
)   COMPLAINT AND
v. )   DEMAND FOR JURY
)   TRIAL   MAY 2 0 2008
WELTMAN, WEINBERG, )   **FILED**
AND REIS, LLP, and )
CAPITAL ONE )
BANK, )   MAY 2 0 2008 **TC**
    DEFENDANTS. )   May 20, 2008
        **MICHAEL W. DOBBINS**
  **COMPLAINT**   **CLERK, U.S. DISTRICT COURT**

## I. INTRODUCTION

1.    This is an action for damages brought by an individual consumer for Defendants' violations of the Fair Debt Collection Practices Act, 15 US.C. §1692 et seq. ("FDCPA"), the Fair Credit Reporting Act, 15 U.S.C. §1681 et seq. ("FCRA"), the Illinois Consumer Fraud and Deceptive Business Practices Act as defined in 815 ILCS 505/1 et seq. ("Consumer Fraud Act"), and for civil conspiracy by the Defendants to commit fraud. The FDCPA prohibits deceptive, unfair, or unconscionable debt collection practices, the FCRA requires a furnisher of information to a credit reporting agency to report only accurate and complete information and to correct information that is false, and the Consumer Fraud Act protects consumers from unfair or deceptive practices in the conduct of trade or business.

## II. JURISDICTION

2.    Jurisdiction of this Court arises under 15 U.S.C. § 1692k(d), 15 U.S.C. § 1681p, and 28 U.S.C. 1331. Supplemental jurisdiction exists for the state law claims pursuant to 28 U.S.C. §1367.

## III. PARTIES

3.    Plaintiff, Mario K. Kasalo ("Plaintiff"), is a resident of Cook County, Illinois and is a "consumer" as defined at 15 U.S.C. §1692a(3) of the FDCPA, and is a "consumer" as defined at 15 U.S.C §1681a(c) of the FCRA.

4.    Defendant, Weltman, Weinberg, & Reis Co., LPA, ("Weltman") is a "debt collector" as defined at 15 U.S.C. § 1692a(6) with its principal place of business in Cleveland, Ohio. Defendant is also a "person" as defined by 15 U.S.C. § 1681a (b).

5.    Defendant, Capital One Bank, ("Capital One") is a New York bank and credit card issuer that is a corporation duly authorized to transact business in Illinois. Defendant is also a "person" as defined by 15 U.S.C. § 1681a (b).

6.    The primary business of Weltman in Chicago is the collection of defaulted debts. Weltman regularly transacts business in the State of Illinois, engaging in the collection of debts due or alleged to be due another through the use of the United States mails, the telephone, or other instruments of interstate commerce and is subject to the jurisdiction of this Court. Defendant's address is 10 S. LaSalle Street, Suite 900, Chicago, Illinois 60603.

7.    The primary business of Capital One in Chicago is in banking and credit cards.

## IV. FACTS COMMON TO ALL COUNTS

8.    On or about January 17, 2000, Plaintiff applied for a Capital One credit card account ("Account"). Plaintiff's application was accepted, and Plaintiff was extended credit soon thereafter under card numbers alleged variously by Capital One as being 4121741653186200, 4121741762401847, and 4121741861715071.  (Exhibit A, Copy of Capital One Application).

9.    By application and acceptance of the terms of the Account, Plaintiff and Capital One became bound by terms and conditions in the Cardholder Agreement. Some of the terms and conditions contained in the agreement between Plaintiff and Capital One were that Plaintiff would not be responsible for unauthorized or fraudulent charges to his account,  that Capital One would reasonably investigate all disputes should disputes occur, and that Plaintiff would not be responsible for charges for transactions that are void or illegal in Illinois. (Exhibit B, Document Capital One purports to be copy of "Cardholder Agreement" between Plaintiff and Capital One).

10.    In or around late 2000 and/or early 2001, Plaintiff noticed that various charges appeared on his account statement that he did not authorize. (Exhibit C, Copy of account statements showing unauthorized charges from January 24, 2001 to February 8, 2001, February 24, 2001, and March 1, 2001). Plaintiff thereafter telephoned Capital One and notified it of said unauthorized charges, and subsequently completed and submitted a "Fraud Information Form" to Capital One, wherein Plaintiff averred that said charges were not made by him. Plaintiff thereafter mailed said completed form to Capital One, and the form was received by Capital One soon thereafter. In a subsequent conversation with a Capital One representative, Plaintiff was informed that the unauthorized charges stemmed from cash advances and Internet gambling bets charged to his credit card.

11.    Upon information and belief, for the charges and cash advances shown on the account statement attached as Exhibit C (notated as "unauthorized"), Capital One authorized and allowed said disputed cash advances to be made from Plaintiff's Capital One credit card account to various Internet gambling website accounts. Once funds were deposited to a gambling website account, an accountholder could use the advanced funds for no other purpose but to gamble on the gambling website that was holding said funds.

12.    Upon information and belief, when said cash advances were deposited by Capital One to an account assigned to the Plaintiff which could only be used for Internet gambling transactions, each cash advance transaction was already "coded" to indicate what specifically was being bought or sold in the transaction. During all times relevant to this complaint, based on the codes associated with each transaction, Capital One was aware, before processing the transactions, that it was processing transactions "coded" as being for the sole purpose of funding Internet gambling accounts.

13.    At all relevant times, there was in full force and effect in the State of Illinois a statute, 20 ILCS 5/28-7, which provides in relevant part:

Sec. 28-7. Gambling contracts void.

> (a) All promises, notes, bills, bonds, covenants, contracts, agreements, judgments, mortgages, or other securities or conveyances made, given, granted, drawn, or entered into, or executed by any person whatsoever, where the whole or any part of the consideration thereof is for any money or thing of value, won or obtained in violation of any Section of this Article are null and void.

14.    Capital One credited the Plaintiff for said disputed and unauthorized Internet gambling charges, and sent Plaintiff a letter, dated March 15, 2001, that recognized that Plaintiff had contacted Capital One to report unauthorized charges incurred on Plaintiff's account. (Exhibit D, March 15, 2001 Letter from Capital One recognizing that Plaintiff was disputing charges made to account). Capital One thereafter ended its investigation and, in a telephone conversation with Plaintiff, informed Plaintiff that because he did not cooperate with Capital One's investigation, he would be held liable for all disputed charges on his account, including for all billed Internet gambling charges and cash advances.

15.    Capital One thereafter reported Plaintiff's alleged debt, which included both unauthorized cash advances and Internet gambling charges, as derogatory information to the TransUnion, Experian, and Equifax credit bureaus. Specifically, Capital One reported the alleged debt as being due and owing, and as being in "Collection/chargeoff" and in default, and this derogatory information was reflected in the Capital One tradeline listed in Plaintiff's credit reports for the bureaus listed above. Capital One continued to report said negative information to credit reporting bureau Experian until January, 2008, when it reported that Plaintiff owed $3276.00 to Capital One on the alleged debt. Capital One similarly reported that Plaintiff owed $3298.00 to credit reporting bureau Equifax in February, 2008. (Exhibit E, Copies of Experian, Equifax, and TransUnion credit reports).

16.    On a date unknown to the Plaintiff, but before September of 2006, Capital One hired Weltman, a debt collector, to collect the alleged outstanding debt Capital One contended was owed by the Plaintiff, and Weltman there and then became authorized to act on behalf of Capital One to collect the alleged outstanding debt from Plaintiff. Plaintiff thereafter received a collection letter from Weltman which stated that Weltman had been retained to collect the "outstanding balance due and owing on this account". Weltman further stated, in said letter, that as of the date of September 13, 2006, Plaintiff owed the amount of $2, 704.67 to Capital One. (Exhibit F, September 13, 2006 letter from Weltman). The letter also stated in part:

> Unless you dispute the validity of this debt, or any portion thereof, within thirty (30) days of receipt of this letter, we will assume that the debt is valid. If you notify us in writing within the thirty (30) day period that the debt, or any portion thereof, is disputed, we will obtain verification of the debt and mail you a copy.

17.    On September 26, 2006, Plaintiff responded to Weltman's  September 13, 2006 letter by sending his own letter to Weltman's office in Ohio disputing the validity of the alleged debt. Specifically, Plaintiff requested that Weltman provide documents in its possession, from Capital One, to verify the origin and validity of the debt Capital One alleged is due and owing by Plaintiff. (Exhibit G, Letter to Weltman from Plaintiff).  Said letter stated that the debt was for fraudulent charges, and also informed Weltman of Plaintiff's  current address, since Weltman had persisted on attempting to serve Plaintiff at the home of a family member instead of at his own home. Plaintiff placed said letter with proper postage in a United States Postal Service Mail Box in Chicago, Illinois on September 26, 2006, and said letter was received by Weltman shortly thereafter.

18.    On September 14, 2006, Weltman obtained a copy of Plaintiff's TransUnion credit report. Inexplicably, without a permissible purpose, one day later on September 15, 2006, Weltman again obtained a copy of Plaintiff's TransUnion credit report.  (Exhibit H, copies of Plaintiff's credit reports showing Plaintiff's credit report accessed on consecutive dates of September 14, 2006 and September 15, 2006).

19.    Weltman did not respond to Plaintiff's letter requesting verification of the alleged debt owed to Capital One, and did not provide supporting documents which could verify the subject debt Capital One alleged was owed by Plaintiff. Weltman thereafter continued in its collection efforts toward Plaintiff via telephone contact as well as written correspondence seeking repayment of the alleged debt, despite not having provided Plaintiff verification of said debt.

20.    Weltman filed a 1-page Complaint ("the Complaint") on behalf of Capital One against the Plaintiff on December 5, 2006 in the Municipal Department of the Circuit Court of Cook County, Illinois, to collect the alleged debt. (Exhibit I, *Capital One Bank vs. Mario K. Kasalo*, Case number  06 M1195014). Despite Capital One's recognition, in

a letter dated March 15, 2001, that the alleged debt was disputed by the Plaintiff, Weltman filed its Complaint alleging that an "account stated" existed between Capital One and the Plaintiff for the amount of $3,162.29. Said Complaint was devoid of any relevant dates, and had neither a contract, affidavit from Capital One, nor account statement attached to it. Further, said Complaint sought to recover $3162.29 "plus interest and costs of suit", despite the fact that interest had already been included in the $3162.29 prayer for relief.

21.    Plaintiff hired attorney J. Nicolas Albukerk ("Albukerk") to defend him against the complaint filed by Capital One. Albukerk also requested that Weltman forward a copy of the Capital One Complaint filed against the Plaintiff to his Office, as no copy of the Complaint existed in case file. (Exhibit J, May 29, 2007 Letter to Weltman requesting copy of Complaint filed against Plaintiff under case number 06 M1 195014).

22.    On April 11, 2007, Weltman sent Albukerk a letter stating that Weltman did not possess any documents pertaining to the action upon which it filed its Complaint against Plaintiff, despite having filed a lawsuit against Plaintiff 5 months earlier alleging the existence of an "account stated". Weltman further stated that it had requested that documents "supporting the charges from the account" be forwarded to Weltman's office, stating that "once received, I shall forward (the documents) the same to your attention." (Exhibit K, April 11, 2007 Letter from Weltman). Thereafter, on May 30, 2007, Weltman forwarded to Albukerk a copy of the Complaint filed in this matter. (Exhibit L, May 30, 2007 Fax from Weltman containing copy of Complaint filed against Plaintiff).

23.    Plaintiff waived service of process for the Capital One Complaint, and Albukerk entered an appearance on behalf of the Plaintiff on May 22, 2007. Plaintiff entered his appearance willingly due to the fact that Capital One repeatedly attempted to serve Plaintiff at the home of his parents, instead of his own residence. Notably, Plaintiff had moved from his parents' home over 10 years earlier and, as indicated, Plaintiff had already informed Weltman of his proper address over 6 months earlier in his letter sent to Weltman's Ohio office (Exhibit G, Letter to Weltman from Plaintiff).

24.    From January 8, 2007 to the hearing on Plaintiff's Motion to Dismiss held over 8 months later on September 17, 2007, attorney Albukerk repeatedly informed Weltman via telephone, email, and letter, that the charges that formed the basis of Capital One's lawsuit against Plaintiff were invalid, fraudulent, and unenforceable. Albukerk's communications specifically stated that the Defendant that it had a duty to dismiss the lawsuit based on the following arguments:

i)    Weltman had admitted, in its April 11, 2007 letter to Plaintiff, that it did not have any account documents in its possession when it filed its Complaint against Plaintiff, and neither a contract nor affidavit from Capital One was attached to said Complaint; thus Defendant could not have performed an intelligent and reasonable inquiry into the facts before it filed said suit against Plaintiff;

ii)   Since Capital One expressly recognized that Plaintiff had, in writing, disputed the validity of the alleged debt, the allegation in Capital One's complaint that there was an "account stated" was a misrepresentation (Exhibit D, March 15, 2001 letter to Plaintiff from Capital One); and

iii)  Defendants were attempting to collect a debt that was barred by 720 ILCS 5/28-7, 720 ILCS 5/28-1, and 720 ILCS 5/28-1-a(12) of the Illinois Code, since the debt alleged by Capital One, to be owed by Plaintiff, constitutes charges arising from bets made to Internet gambling operations.

(Exhibit M, letters and emails to Weltman)

25.    Capital One refused to dismiss or amend its complaint against Plaintiff despite being repeatedly informed, through its agent Weltman, of Plaintiff's assertion that the debt it was attempting to collect from the Plaintiff was invalid, fraudulent, and void. Plaintiff thereafter filed a Motion to Strike and Dismiss the Complaint, which was heard on September 17, 2007. The judge presiding over the matter, Judge Hill Veal, found that Capital One's Complaint was deficient and did not support an "account stated", and granted Capital One leave to file an amended complaint against the Plaintiff. (Exhibit N, Order of September 17, 2007 entered by Judge Pamela Hill Veal).

26.    Weltman subsequently filed its Amended Complaint on behalf of Capital One on October 15, 2007. (Exhibit O, October 15, 2007 Amended Complaint). Notably, Weltman abandoned its "account stated" theory of recovery, and decreased its prayer for relief to $2,671.58. Specifically, said Amended Complaint alleged that the Capital One "waives any collection efforts" for an Internet gambling charge that Capital One had sought to collect in the initial Complaint filed against the Plaintiff. Notably, Defendants had previously insisted in recovering said "waived debt" from the Plaintiff from the time it filed its Complaint on December 5, 2006, to the date it filed its Amended Complaint on October 15, 2007, despite the Plaintiff's repeated notifications, during that time period, that Defendants were seeking to recover an invalid debt.

27.    Capital One's Amended Complaint continues to seek repayment of both unauthorized Internet gambling charges as well as fraudulent charges made to the subject account.

28.    On June 1, 2007, Plaintiff served Capital One with Interrogatories as well as a Request to Produce in the pending Illinois state case, filed under case number 06 m1 195014. To this date, after almost one year from the time said discovery was served, Capital One has refused to answer discovery requested by the Plaintiff in the pending state case, which includes a request for all copies of statements kept on Plaintiff's credit card account. Capital One has also refused, and continues to refuse, to provide a legible copy of the Cardholder Agreement entered into between Capital One and the Plaintiff.

29.    During the period that Capital One was reporting the alleged debt to credit reporting bureaus Equifax, Experian, and TransUnion, Capital One did not timely inform

Equifax, Transunion, or Experian that the alleged debt was disputed, despite Plaintiff's repeated communications, sent to Capital One, that stated that Plaintiff disputes the accuracy and validity of the debt alleged. (Exhibit P, Credit Report of Plaintiff).

30.    Despite having decreased its prayer for relief to $2671.58, and waiving its collection efforts for at least one Internet Gambling charge barred by Illinois law, Capital One has continued to incorrectly report, even by its own calculations, the amount of debt it alleges is owed by the Plaintiff, and in January, 2008 Capital One reported to the Equifax, Experian, and TransUnion credit reporting agencies that Plaintiff owes $3276.00 on the subject debt. (Exhibit E, Copy of Plaintiff's Credit Report).

31.    On a monthly basis, Capital One continued to add interest to the balance it alleges is owed by the Plaintiff, including to the portion of the alleged debt it concedes stems from Internet gambling activity, and has continued to report said balances to the Equifax, Experian, and TransUnion credit reporting agencies, despite never having provided to the Plaintiff the verification documents he requested from Weltman in a letter he wrote and sent to Weltman on September 26, 2006.

32.    Plaintiff has not yet received documents verifying the subject alleged debt that he requested from Weltman in a letter he sent on September 26, 2006.

## V. PLAINTIFF'S FIRST CLAIM FOR RELIEF
### (Violations of the Fair Debt Collection Practices Act—Weltman)

33.    Plaintiff repeats, re-alleges and incorporates by reference paragraphs One (1) through Twenty-Six (32) as though they were fully written herein.

### Count One–Defendant Violated 15 USC § 1692e

34.    Weltman violated 15 USC § 1692e of the FDCPA. Weltman's violations include, but are not limited to, the following:

a.    Weltman violated 15 USC § 1692e (2)(A) and 15 USC § 1692e (10), and misrepresented the character and legal status of the alleged debt, by filing a complaint alleging that an "account stated" existed on the Account, and by continuing to collect the alleged debt pursuant to an "account stated" theory, despite the existence of Capital One's own previous written acknowledgement that Plaintiff has disputed the alleged debt with Capital One.

b.    Weltman violated 15 USC § 1692e (2)(A) and 15 USC § 1692e (10) by filing a complaint against Plaintiff relating to an alleged debt without having any documents in its possession relating to said alleged debt which would allow it to make a considered, professional judgment as to the merit and validity of the alleged debt. Specifically, Weltman did not have any documents in its possession pertaining to the alleged debt before it filed the complaint, and did not have Capital One validly certify the amount and character of the alleged debt via affidavit or

otherwise, but Weltman nonetheless attempted to conceal the existence of void charges by misrepresenting the alleged debt as an "account stated".

c.  Weltman violated 15 USC § 1692e (2)(A) and 15 USC § 1692e (10) by misrepresenting the amount of the alleged debt by filing and maintaining the complaint containing a prayer for relief in the amount of "$3162.29, plus interest and costs of suit", as Weltman had already included the amount of interest it alleged was due in its $3162.29 prayer for relief.

d.  Weltman violated 15 USC § 1692e (2)(A) and 15 USC § 1692e (10) by misrepresenting, as valid and owing, the character and amount of the debt it alleges to be owed in both the Complaint and Amended Complaint filed against Plaintiff, as said debt consists of Internet gambling charges which, pursuant to 720 ILCS 5/28-7 and 720 ILCS 5/28-1-a(12), are null and void in Illinois.

### Count Two–Defendant Violated 15 USC § 1692f

35.  Weltman violated 15 USC § 1692f of the FDCPA. Weltman's violations include, but are not limited to, the following:

a.  Weltman violated 15 USC §1692f (1) by filing and maintaining its initial Complaint against Plaintiff seeking the collection of "$3162.29, plus interest and costs of suit". Weltman's conduct is a violation of this section because Weltman had already included the interest it alleges is owed by Plaintiff in the $3162.29 amount it sought to collect, but Weltman nonetheless sought to have additional interest imposed on said amount, although said interest is not authorized by either the agreement creating the alleged debt or by Illinois law.

b.  Weltman violated 15 USC §1692f (1) when it filed and maintained its initial Complaint against Plaintiff seeking the collection of "$3162.29, plus interest and costs of suit", when said amount included debts that which, pursuant to 720 ILCS 5/28-7 and 720 ILCS 5/28-1-a(12), are null and void, and thus not permitted by Illinois law.

c.  Weltman violated 15 USC §1692f (1) when it filed and maintained its Amended Complaint against Plaintiff seeking the collection of "$2671.58", when said amount, although reduced, continued to seek collection of debts that pursuant to 720 ILCS 5/28-7 and 720 ILCS 5/28-1-a (12), are null and void, and thus not permitted by Illinois law.

d.  Weltman violated 15 USC §1692f (1) when it filed and maintained its Amended Complaint against Plaintiff which had an illegible document attached to it which Weltman purported to be a copy of the cardholder agreement between Plaintiff and Capital One.

e.     Weltman violated 15 USC §1692f when the debt at issue was charged off over five years prior to the filing of the lawsuit and Weltman did not have the original or an image for a contract signed by Plaintiff, and had no evidence that Plaintiff actually signed a contract.

f.     Weltman violated 15 USC §1692f when it did not have an original or an image of the account agreement to attach to the December 5, 2006 Complaint filed against the Plaintiff as required, or any means of proving its terms, but proceeded to file Complaint number 06 M1 195014 against the Plaintiff in the Municipal Department of Cook County, Illinois, alleging the existence of an "account stated" between Capital One and the Plaintiff on the subject account.

## Count Three–Defendant Violated 15 USC § 1692g

36.     In September of 2006, Plaintiff received a collection letter from Weltman, a collection agency hired by Capital One, which stated that Weltman had been retained to collect the "outstanding balance due and owing on this account". Weltman further stated, in said letter, that as of the date of September 13, 2006, Plaintiff owed the amount of $2,704.67 to Capital One. The letter also stated in part:

> Unless you dispute the validity of this debt, or any portion thereof, within
> thirty (30) days of receipt of this letter, we will assume that the debt is valid.
> If you notify us in writing within the thirty (30) day period that the debt, or
> any portion thereof, is disputed, we will obtain verification of the debt and
> mail you a copy.

37.     On September 26, 2006, Plaintiff responded to Weltman's September 13, 2006 letter. Specifically, Plaintiff sent Weltman a letter that requested that Weltman provide documents in its possession, from Capital One, to verify the debt Capital One alleges is due and owing by Plaintiff. Plaintiff placed said letter with proper postage in a United States Postal Service Mail Box in Chicago, Illinois on September 26, 2006, and said letter was received by Defendant a short time thereafter. Accordingly, Weltman's violations of 15 USC §1692g by continuing its attempts to collect an unverified debt include, but are not limited to, the following:

a.     Weltman violated 15 USC §1692g (b) by continuing its collection efforts, via telephone and letter, on the disputed unverified alleged debt after receiving Plaintiff's request for verification of the alleged debt, despite not having verified the disputed unverified alleged debt.

b.     Weltman violated 15 USC §1692g (b) by filing a Complaint in The Circuit Court of Cook County, Illinois, under complaint number 06 M1 195104 Municipal Department, despite not having verified the disputed alleged debt.

WHEREFORE Plaintiff prays that this Court grant the following relief:

-Actual damages sustained by Plaintiff;
-Statutory damages pursuant to 15 U.S.C. §1692k;
-Costs and reasonable attorney's fees pursuant to 15 U.S.C. §1692k;
-For such other and further relief as may be just and proper.

### VI. PLAINTIFF'S SECOND CLAIM FOR RELIEF
### (Violations of the Illinois Consumer Fraud Act, 815 ILCS 505/1 et seq.—Weltman)

38.    Plaintiff repeats, re-alleges and incorporates by reference paragraphs One through Thirty-Seven (37) as though they were fully written herein.

39.    This consumer fraud count is against Weltman for the period of time that it was attempting to collect the alleged debt from the Plaintiff on behalf of Capital One, from on or around September 14, 2006 to December 5, 2006, when it filed Complaint number 06 M1 195014, on behalf of Capital One against the Plaintiff.

40.    At all relevant times, there was in full force and effect in the State of Illinois a statute commonly known as the Consumer Fraud and Deceptive Business Practices Act, 815 ILCS § 505/2. which provides in pertinent part as follows:

> Unfair methods of competition and unfair deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in section 2 of the "Uniform Deceptive trade Practices Act", approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby.

41.    The Consumer Fraud and Deceptive business Practices Act further provides [ 815 ILCS 505/10(a)]:

> Any person who suffers actual damages as a result of a violation of this Act committed by any other person may bring an action against such person. The court, in its discretion may award actual economic damages or any other relief which the court deems proper;…

42.    Plaintiff is a consumer within the meaning of the Consumer Fraud and Deceptive Business Practices Act [815 ILCS 505/1(e)].

43.    The collection of debts constitutes an action involving commerce or trade as defined by the Consumer Fraud and Deceptive Business Practices Act.

44.    On or around January 2001 to the present, Plaintiff repeatedly disputed the debt alleged, and has provided repeated notices of said dispute to both Weltman and its client creditor Capital One. Specifically, Weltman sent Plaintiff a letter requesting payment of $2704.67 on September 13, 2006. Weltman sent Plaintiff a letter again on October 17, 2006, requesting payment of $2728.26.

45.    In September and October 2006, Weltman did not represent Capital One in any legal proceeding against the Plaintiff, but was operating as a collection agency retained by Capital One for the purpose of collection of the disputed debt alleged to be owed by Plaintiff to Capital One.

46.    On September 13, 2006 and repeatedly thereafter, Weltman misrepresented the amount, character, and enforceability of the debt it alleged to be owed by Plaintiff in its letters and pleadings to Plaintiff. Weltman's deceptive acts and misrepresentations include the following:

a.    In the September 13, 2006 letter sent by Weltman to Plaintiff, Weltman stated that the amount due and owing by Plaintiff was $2704.67. Said statement was a misrepresentation because, by Capital One's own admission, said figure included a charge for $300.00 which Weltman was not authorized to collect by either the agreement by law, but that Weltman had nonetheless insisted on collecting from the Plaintiff. Specifically, Weltman continued to seek collection of said charge on October 15, 2007, when it filed an Amended Complaint in which it stated that "Plaintiff waives any collection efforts for the transaction dated February 8, 2001 in the amount of $300.00". Previous to waiving its collection efforts for said unauthorized charge, Weltman persisted in its efforts on collecting said charge, from September 13, 2006 to October 15, 2007, when Weltman filed an Amended Complaint against the Plaintiff.

b.    In its September 13, 2006 and October 17, 2006 collection letters sent to Plaintiff, Weltman stated that the alleged debt was due and owing, and demanded that that Plaintiff pay said debt, although said debt included charges that were both unauthorized and incurred as a result of unenforceable Internet Gambling bets placed and charged to said Capital One account. This was a deceptive act because Weltman was attempting to collect a debt that was unenforceable in Illinois pursuant to 720 ILCS 5/28-7 and 720 ILCS 5/28-1-a(12).

c.    Without having a copy of the account documents relating to the subject account, Weltman filed a Complaint against Plaintiff alleging the existence of an "account stated". This was a deceptive act and misrepresentation because Weltman did not have any documents in its possession that could support the filing of a Complaint alleging an account stated theory of recovery, and was deceptive also because

Plaintiff had expressly disputed the validity and accuracy of the alleged debt in the past, as recognized by the March 15, 2001 letter sent to Plaintiff from Capital One.

47.    Weltman intended that Plaintiff rely on the representations that the debt alleged is correct, enforceable, due, and owing, and Weltman intended to induce Plaintiff to pay the alleged debt through said deceptive acts and misrepresentations. For example, in an attempt to have Plaintiff settle the debt, Defendant sent Plaintiff a letter that stated that it was "important to contact" Defendant's Office to "discuss the amount necessary to settle this account."

48.    The deception occurred while Weltman was attempting to collect a debt from Plaintiff, for consideration paid by Capital One, and thus occurred in the course of conduct involving trade and commerce among Capital One, Weltman, and Plaintiff.

49.    The Plaintiff was deceived by Weltman's representations that the alleged debt is due and owing, and Plaintiff retained and paid an attorney to settle the matter relating to the debt alleged, but was later informed by said attorney that the debt alleged was invalid, unenforceable, and void, and thus did not need to be repaid.

50.    Plaintiff incurred actual damages as the result of Weltman's misrepresentations, as Plaintiff paid for an attorney to defend him against the complaint filed by Defendant on behalf of Capital One. Plaintiff also incurred damage to his credit rating as the result of Defendant's failure to inform Capital One that the alleged debt is unenforceable, and Plaintiff has thus been denied credit as the result of Weltman's actions. Plaintiff has also suffered harm to his marriage, and has suffered extreme emotional distress as the result of Defendant's actions. (Exhibit Q, Proof of damage to credit).

WHEREFORE Plaintiff prays that this Court grant the following relief:

   -Actual damages sustained by Plaintiff;
   -Punitive damages;
   -Costs and reasonable attorney's fees;
   -For such other and further relief as may be just and proper.

## VII. PLAINTIFF'S THIRD CLAIM FOR RELIEF
### (Violations of the Illinois Consumer Fraud Act, 815 ILCS 505/1 et seq.—Capital One)

51.    Plaintiff repeats, re-alleges and incorporates by reference paragraphs One through Fifty (50) as though they were fully written herein.

52.    This consumer fraud count is against Capital One.

53.    At all relevant times, there was in full force and effect in the State of Illinois a statute commonly known as the Consumer Fraud and Deceptive Business Practices Act, 815 ILCS § 505/2. which provides in pertinent part as follows:

> Unfair methods of competition and unfair deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in section 2 of the "Uniform Deceptive trade Practices Act", approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby.

54.    The Consumer Fraud and Deceptive business Practices Act further provides [ 815 ILCS 505/10(a)]:

> Any person who suffers actual damages as a result of a violation of this Act committed by any other person may bring an action against such person. The court, in its discretion may award actual economic damages or any other relief which the court deems proper;...

55.    Plaintiff is a consumer within the meaning of the Consumer Fraud and Deceptive Business Practices Act [815 ILCS 505/1(e)].

56.    Capital One's business involves the issuance of credit cards to consumers, and the collection of debts incurred therefrom, which constitute actions involving commerce or trade as defined by the Consumer Fraud and Deceptive Business Practices Act.

57.    In or around the years 2000 and 2001, Capital One knowingly advanced funds to various internet gambling operation accounts, allegedly on behalf of the Plaintiff and from Plaintiff's Capital One credit card account number 4121741861715071, for the purpose of effecting gambling transactions with said internet gambling operation accounts. Charges for said transactions were posted to Plaintiff's credit card account, and Capital One thereafter asserted that Plaintiff was responsible for said charges. (Exhibit R, Copy of Plaintiff's statement showing gambling charges).

58.    Plaintiff repeatedly thereafter disputed that he had made said charges. (Exhibit, March 15, 2001 Letter from Capital One acknowledging Plaintiff's dispute of charges).

59.    Between the years of 2001 and 2008, Capital One sent Plaintiff letters and filed pleadings in the Cook County, Illinois state court system, which contained material misrepresentations and omissions regarding the amount, character, and enforceability of said Capital One credit card account charges, and deceptively reported incorrect account data to the credit reporting bureaus Equifax, Experian, and Transunion pertaining to the

Capital One credit card account to which said charges were posted. Said actions include, but are not limited to, the following:

a.    On December 5, 2006, Capital One filed a Complaint against the Plaintiff, which alleged that an "account stated" existed between itself and Plaintiff stemming from transactions incurred on credit card account number 4121741861715071 (also alleged variously as account number 4121741653186200 and 4121741762401847), in the amount of $3162.29. By alleging the existence of an account stated, Capital One then and there misrepresented that Plaintiff had agreed to the accuracy and validity of the $3162.29 figure sought from Plaintiff by Capital One, and materially omitted that Plaintiff had previously expressly disputed the validity and accuracy of said debt, as recognized by Capital One in its March 15, 2001 letter sent by Capital One to Plaintiff, which reads, in relevant part:

Thank you for contacting Capital One in regard to potential fraudulent charges/transactions on the account referenced above. (Exhibit D, March 15, 2001 Letter from Capital One).

b.    Between the years of 2006 and 2008, Capital One, through its agent Weltman, repeatedly sent Plaintiff collection letters which alleged that there was a $2704.67 "balance due and owing" on Plaintiff's Capital One credit card account number 4121741861715071. (Exhibit F, Collection letters). Each and every time Capital One sent Plaintiff a collection letter alleging that the balance alleged by Capital One was due and owing from Plaintiff, Capital One attempted to collect a debt that was barred by 720 ILCS 5/28-1, 720 ILCS 5/28-1-a (12), and 720 ILCS 5/28-7 of the Illinois Code, and Capital One's act of attempting to collect said alleged debt by sending Plaintiff collection letters misrepresenting that the debt was valid, and "due and owing", was deceptive thereby.

c.    Between the years of 2006 and 2008, Capital One reported to the Experian, Equifax, and TransUnion credit reporting agencies, that the balance on credit card number 4121741861715071 was due and owing, in arrears, and unpaid. Each and every time Capital One reported said information to said bureaus, Capital One misrepresented the amount of the alleged debt that was valid and legally owed by the Plaintiff and that was not barred by 720 ILCS 5/28-1, 720 ILCS 5/28-1-a (12), and 720 ILCS 5/28-7 of the Illinois Code. (Exhibit P, Credit Bureau Statements).

d.    On December 5, 2006, Capital One filed a Complaint against the Plaintiff, which alleged that an "account stated" existed between itself and Plaintiff stemming from transactions incurred on credit card account number 4121741861715071 (later transferred to account number 4121741762401847), in the amount of $3162.29. Capital One then and there misrepresented that said alleged debt was valid and legally owed by the Plaintiff and not barred by 720 ILCS 5/28-1, 720 ILCS 5/28-1-a (12), and 720 ILCS 5/28-7 of the Illinois Code, and was authorized by Illinois law. (Exhibit I, Complaint).

e.      On October 15, 2007, Capital One filed its Amended Complaint against the Plaintiff, which alleged that Plaintiff owed $2671.58 stemming from transactions incurred on credit card account number 4121741861715071 (later transferred to account number 4121741762401847). Capital One then and there misrepresented that said alleged debt was valid and legally owed by the Plaintiff and not barred by 720 ILCS 5/28-1, 720 ILCS 5/28-1-a (12), and 720 ILCS 5/28-7 of the Illinois Code, and was authorized by Illinois law. (Exhibit O, Amended Complaint).

f.      On or around January 17, 2000, Plaintiff applied for and was issued a Capital One credit card, under card number 4121741653186200. The terms and conditions of the Cardholder Agreement included a provision which read that the cardholder would not be responsible for unauthorized charges. By offering said terms and conditions to Plaintiff when it never intended to honor the same, Capital One then and there committed the deceptive act of inducing the Plaintiff to accept a Capital One credit card under conditions it did not intend to honor, as evidenced by Capital One's attempts to collect a debt from the Plaintiff consisting of credit card charges not authorized by the Plaintiff.

60.     The misrepresentations, omissions, and deceptive acts alleged above occurred while Capital One was attempting to collect a debt from Plaintiff, and thus occurred in the course of conduct involving trade and commerce between Capital One and Plaintiff.

61.     The Plaintiff was deceived by Capital One's credit card terms and conditions offered to the Plaintiff, and in part relied on Capital One's assurance in said terms and conditions that he would not be responsible for unauthorized or void transactions made to the account.

62.     The Plaintiff was deceived by Capital One's representations that the credit card debt it alleges is owed by the Plaintiff is valid, due and owing, and Plaintiff retained and paid an attorney to settle the matter relating to the debt alleged, but was later informed by said attorney that the debt alleged was invalid, unenforceable, and void, and thus did not need to be repaid.

63.     Plaintiff incurred actual damages as the result of Capital One's misrepresentations, as Plaintiff paid for an attorney to defend him against the complaint filed by Defendant on behalf of Capital One. Plaintiff also incurred damage to his credit rating as the result of Capital One reporting said alleged debt to credit reporting agencies TransUnion, Equifax, and Experian, as being valid and in arrears, due and owing, and Plaintiff has been denied credit and been offered unfavorable credit terms due to Capital One's actions in this regard. Plaintiff has also suffered harm to his marriage, and has suffered extreme emotional distress as the result of Defendant's actions. (Exhibit Q, Proof of damage to Plaintiff's credit).

WHEREFORE Plaintiff prays that this Court grant the following relief:

-Actual damages sustained by Plaintiff;
-Punitive damages;
-Costs and reasonable attorney's fees;
-For such other and further relief as may be just and proper.

## VIII. PLAINTIFF'S FOURTH CLAIM FOR RELIEF
### (Violations of the Fair Credit Reporting Act, 15 U.S.C § 1681 et seq.—Weltman)

64.    Plaintiff repeats, re-alleges and incorporates by reference paragraphs One through Sixty-Three (63) as though they were fully written herein.

65.    Weltman violated the FCRA by requesting and receiving copy of Plaintiff's credit report from TransUnion on September 15, 2006, after having requested and received a copy of the same report a day earlier, on September 14, 2006. (Exhibit H, Copies of Plaintiff's credit report showing Weltman accessing Plaintiff's report on successive days). Weltman's violations include, but are not limited to, the following:

a.    Weltman violated 15 U.S.C § 1681b (a)(3)(A) by misrepresenting that it had the valid purpose to use the information contained in the September 15, 2006 report to aid in the collection of an account. This was a misrepresentation because Weltman had already obtained an identical report from TransUnion a day earlier, and thus there existed no valid purpose for obtaining said second identical report, except to damage Plaintiff's credit and wrench compliance with Weltman's demands as to the underlying alleged debt;

b.    Weltman violated 15 U.S.C § 1681b (a)(3)(F) by misrepresenting that it had a legitimate business need for requesting and obtaining the September 15, 2006 report, since Weltman had already obtained an identical report from the TransUnion a day earlier.

WHEREFORE Plaintiff prays that this Court grant the following relief:

-Actual damages sustained by Plaintiff or $1000.00, whichever is greater, pursuant to 15 USC 1681 n (a) (1) (A) and (B);and
-Punitive damages pursuant to 15 USC 1681 n (b).

## IX. PLAINTIFF'S FIFTH CLAIM FOR RELIEF
### (Violations of the Fair Credit Reporting Act, 15 U.S.C § 1681 et seq.—Capital One)

66.    Plaintiff repeats, re-alleges and incorporates by reference paragraphs One through Sixty-Five (65) as though they were fully written herein.

67.    Repeatedly between the time period of March, 2006 and February, 2008, Capital One reported the debt its alleges is owed by the Plaintiff to the Equifax and Experian credit reporting bureaus, as follows:

| | | |
|---|---|---|
| 03/2006 $2,563 | 12/2006 $2,753 | 10/2007 $3,213 |
| 04/2006 $2,583 | 01/2007 $2,987 | 11/2007 $3,234 |
| 05/2006 $2,604 | 02/2007 $3,009 | 02/2008 $3,298 (Equifax only) |
| 06/2006 $2,625 | 03/2007 $3,036 | |
| 07/2006 $2,647 | 04/2007 $3,091 | |
| 08/2006 $2,667 | 05/2007 $3,107 | |
| 09/2006 $2,689 | 07/2007 $3,149 | |
| 10/2006 $2,710 | 08/2007 $3,170 | |
| 11/2006 $2,731 | 09/2007 $3,192 | |

68.    Repeatedly between the time period of March, 2006 and February, 2008, Plaintiff sent letters to the Equifax and TransUnion crediting reporting bureaus requesting that an investigation be performed as to the alleged debt Capital One was reporting to said bureaus as being owed by Plaintiff.

69.    In April 2007, Plaintiff sent a letter to the Experian credit reporting bureau requesting that an in investigation be made as to the tradeline pertaining to Capital One account number 4121741861715071. Specifically, Plaintiff wrote in his request that the basis for his dispute is that "Plaintiff disputes that he owes the amount reported by Capital One, as the amount is owed as a result of unauthorized internet gambling transactions".

70.    On May 11, 2007, Plaintiff received a letter from Experian stating that an investigation was completed, and that the information sought to be investigated has been verified as accurate by Capital One, and that the item was verified in May 2007 and remained unchanged. In said letter, Capital One reported that "$3,107.00 past due as of May 2007". (Exhibit S, May 11, 2007 Letter from Experian).

71.    In May 2007, Plaintiff again sent a letter to the Experian credit reporting bureau requesting that an in investigation be made as to the tradeline pertaining to Capital One account number 4121741861715071. Specifically, Plaintiff again wrote in his request that the basis for his dispute is that the balance reported is incorrect, and includes unauthorized charges for internet gambling.

72.    In June, 2007, Plaintiff received a letter from Experian stating that an investigation was completed, and that the information sought to be investigated has been verified as accurate by Capital One, and that the item was verified in June 2007 and remained unchanged. (Exhibit T, Letter from Experian showing account was verified in June 2007, and would remain unchanged).

73.    On October 15, 2007, Capital One filed an Amended Complaint asserting that it had waived collection efforts for $490.71 of the $3162.29 it initially alleged was owed by the Plaintiff under an initial Complaint filed on December 5, 2006 in Illinois State Court,

under Cook County case number 06 M1 195014. The debt that was waived by Capital One was incurred for an Internet gambling transaction. After October 15, 2007, Capital One thus alleged that Plaintiff owed a total of $2,671.58 on the subject debt. (Exhibit O, Amended Complaint).

74.     In January, 2008, Plaintiff again sent a letter to the Experian credit reporting bureau requesting that an in investigation be made as to the tradeline pertaining to Capital One account number 4121741861715071. Specifically, Plaintiff again wrote in his request that the basis for his dispute is that the balance reported is incorrect. (Exhibit U, Letter requesting verification).

75.     In February, 2008, Plaintiff received a copy of his "credit file" from Equifax which was sent in response to the January, 2008 letter described in paragraph 74 above. (Exhibit V, February 15, 2008 copy of Credit File from Equifax). The credit file stated, in relevant part, as follows:

> **We have researched the credit account. Account # 412174186171\* The results are:** This creditor has verified to Equifax that the balance is being reported correctly. If you have additional questions about this item please contact…

76.     Capital One violated 15 USC § 1681s-2. Capital One's violations include, but are not limited to, the following:

a.      Capital One violated 15 USC § 1681s-2 (a) (1) (A) when it reported to Equifax and Experian credit reporting agencies that Plaintiff owed an account balance when Capital One had actual knowledge that said alleged balance included of unenforceable and invalid charges resulting from Internet gambling debts, and was therefore inaccurate.

b.      Capital One violated 15 USC § 1681s-2 (a) (1) (B) when it reported an account balance which included fraudulent charges and unauthorized gambling transactions to the Equifax and Experian credit reporting agencies, between the months of May, 2006 and February, 2008. Capital One's actions violated 15 USC § 1681s-2 (a) (1) (B) because in October of 2007, Capital One expressly waived collection efforts for $490.71 of the $3162.29 it alleges is owed by Plaintiff, yet it continued to report said waived amount as being owed by the Plaintiff, and Capital One continued to report said higher inaccurate alleged debt to the credit reporting agencies until the end of the 7 year reporting period, which ended in March, 2008.

c.      Capital One violated 15 USC § 1681s-2 (a) (2) when it failed, after October of 2007, to update information it supplied to Equifax and Experian to reflect that it had waived collection efforts for $490.71 of the $3162.29 it alleges is owed by Plaintiff, and continued to report that a higher amount was owed by the Plaintiff, and Capital One continued to report said higher inaccurate alleged debt to the credit reporting agencies until the end of the 7 year reporting period, which ended in

March, 2008. (Exhibit V, Copy of Credit File showing $3,298 due and owing by Plaintiff in February, 2008).

d.  Capital One violated 15 USC § 1681s-2 (a) (3) when, despite Plaintiff's repeated dispute letters sent to Capital One and its agent Weltman, Capital One failed to provide the credit reporting agencies Equifax and Experian notice that the account debt alleged to be owed by Plaintiff was disputed by the Plaintiff.

e.  Capital One violated 15 USC § 1681s-2 (a) (8) (E) when it failed to conduct an investigation with respect to the disputed account debt information it had been reporting to credit reporting agencies Equifax and Experian, and failed to review documents it had been provided by the Plaintiff showing that the alleged debt is not owed by the Plaintiff.

f.  Capital One violated 15 USC § 1681s-2 (b) (1) when it failed to conduct an investigation with respect to the disputed account debt information it had been reporting to credit reporting agencies Equifax and Experian, failed to review documents it had been provided by the Plaintiff showing that the alleged debt is invalid, and modify and/or delete the incorrect information it had been reporting to the credit reporting agencies Equifax and Experian.

g.  Capital One violated USC § 1681s-2 (a) (1) and (2) each and every month from Mayl, 2006 to March, 2008, when it reported a new higher alleged debt balance every successive month as the result of adding interest to said alleged debt balance, to the credit reporting agencies Equifax and Experian, as Capital One had actual knowledge that the balances it was reporting were inaccurate, and had continued to report said incorrect balances after having been given notice by the Plaintiff that said balances were inaccurate.

WHEREFORE Plaintiff prays that this Court grant the following relief:

-Actual damages sustained by Plaintiff or $1000.00, whichever is greater, pursuant to 15 USC 1681 n (a) (1) (A) and (B); and

-Punitive damages pursuant to 15 USC 1681 n (b).

## VI. PLAINTIFF'S FOURTH CLAIM FOR RELIEF
### (Civil Conspiracy to Commit Fraud-Weltman and Capital One)

77.  Plaintiff repeats, re-alleges and incorporates by reference paragraphs One through Seventy-Six (76) as though they were fully written herein.

78.  At all times relevant hereto, Weltman was a debt collector.

79.  At all times relevant hereto, Capital One was a corporation duly authorized to do business in Illinois as a bank and credit card company.

80.    At all relevant times, there was in full force and effect in the State of Illinois a statute, 20 ILCS 5/28-7, which provides in relevant part:

Sec. 28-7. Gambling contracts void.

(a) All promises, notes, bills, bonds, covenants, contracts, agreements, judgments, mortgages, or other securities or conveyances made, given, granted, drawn, or entered into, or executed by any person whatsoever, where the whole or any part of the consideration thereof is for any money or thing of value, won or obtained in violation of any Section of this Article are null and void.

81.    Beginning in 2000 through 2001, during the period that 20 ILCS 5/28-7 was in full force and effect, Capital One Bank allowed cash advances to be made from Plaintiff's credit card account number 4121741762401847, to various Internet gambling website operator accounts, whereby money deposited in said operator account could only be used by a bettor for the purpose of placing a gambling bet over the Internet.

82.    Capital One thereafter charged said cash advances to Plaintiff's credit card account number 4121741762401847, and thereafter repeatedly attempted to collect the alleged credit card debt, which included charges for Internet gambling activity, as if it were a valid debt, in violation of 20 ILCS 5/28-7.

83.    On a date unknown to the Plaintiff in the year 2006, Weltman entered into an agreement with Capital One whereby Weltman agreed it would attempt to collect a credit card debt alleged by Capital One to be owed by Plaintiff, said debt comprising unauthorized charges made to Plaintiff's credit card for Internet gambling cash advances and other unauthorized cash advances, in exchange for consideration paid by Capital One, or in exchange for a percentage of any recovery recovered from Plaintiff as the result of Weltman's collection efforts.

84.    On a date unknown to the Plaintiff, Capital One authorized Weltman to make unsupported allegations misrepresenting that an "account stated" existed between Capital One and Plaintiff, and Weltman did in fact allege, in furtherance of the above-mentioned agreement between Capital One and Weltman, in the December 5, 2006 Complaint filed by Capital One that an "account stated" existed between Plaintiff and Capital One. Said authorization was knowing and intentional conduct by Weltman and Capital One, the state collection suit being an extension, and a part of Defendants' fraudulent acts and wrongful debt collection activities against the Plaintiff.

85.    Weltman sent Plaintiff a letter dated September 13, 2006, demanding payment of $2,704.67 it alleged was due and owing as the result of charges Capital One alleges were incurred on Plaintiff's Capital One credit card account number 4121741762401847 . Said charges included charges made to an Internet gambling operation as well as unauthorized cash advances. (Exhibit F, September 13, 2006 letter from Weltman).

86.    Weltman again sent Plaintiff a letter dated October 17, 2006, again demanding payment for charges Capital One alleges were incurred on Plaintiff's Capital One credit card account number 4121741762401847. Said charges included charges made to an Internet gambling website for gambling transactions, as well as unauthorized cash advances.  Said letter stated that $2728.26 was due and owing on the alleged debt.

87.    On December 5, 2006, on behalf of Capital One Bank, Weltman filed a Complaint in Illinois State Court, in Cook County , under Complaint # 06 M1195014, for the purpose of collecting the alleged credit card debt from the Plaintiff. Said Complaint sought to collect, from the Plaintiff, charges for Internet gambling activity, in violation of 20 ILCS 5/28-7, in furtherance of the above-mentioned agreement between Capital One and Weltman. Also in furtherance of the above-mentioned agreement, Weltman misrepresented, in the Complaint it drafted for Capital One, that an "account stated" existed between Capital One and the Plaintiff.

88.    As a result of Capital One and Weltman's foregoing actions, Plaintiff suffered injuries of a pecuniary nature, including damage to his credit rating which resulted in Plaintiff being unable to obtain credit, and legal fees and expenses in defending the lawsuit brought by Defendants described in paragraph number 87 above. Plaintiff has also suffered damage to reputation, mental anguish, embarrassment, and humiliation.

WHEREFORE Plaintiff prays that this Court grant the following relief:

-Judgment against the Defendants as the result of actual damages sustained by Plaintiff in the amount of $25,000, plus attorney's fees;
-Punitive damages based on the willful or wanton conduct of Weltman and Capital One, and;
-Plaintiff prays for such other and further relief as is just and proper.

Respectfully submitted,

J. Nicolas Albukerk
Attorney for Plaintiff

**ALBUKERK & ASSOCIATES**
3025 W 26th St., Fl.2
Chicago, Il 60623
tele. 773.847.2600

# 30-SECOND ACCEPTANCE CERTIFICATE

**VISA**

**Offer Expires:**
February 4, 2000

2877253785223    057    029

Kris M. Kassulo
Apt 1
1902 W Ainslie St
Chicago, IL 60640-3320

*Please cross out and change name and address if necessary*
*Please print clearly*

4141

## 1. Tell us about yourself

Social Security Number
$ 3 4 7 · 8 7 2 · 1 · 8 8 3    Date of Birth  04 · 29 · 1970

Home Phone
7 7 3 · 9 0 7 · 8 5 8 6

## 2. Sign Here

I have read the IMPORTANT DISCLOSURES and Miscellaneous Information on the reverse and agree to be bound as specified therein. This offer is nontransferable. To avoid delays, please provide all information requested.

Signature  _K M Kassulo_    Date  1/19/2000

26736

0625-11

## CUSTOMER AGREEMENT

**WELCOME TO CAPITAL ONE!** We are pleased to open your credit card account. This Agreement contains information about your account. Please read it and keep it for your records. In this Agreement the words "you", "your," and "yours" refer to each person who signed the application and to anyone else who uses the account in any way. The words "we", "us", "our," mean Capital One Bank and its successors or assigns. We can delay enforcing our rights under this Agreement without losing them.

**Using Your Account.** You can make purchases and obtain cash advances (if such advances are an option for your account) by using your card, account number, and any account access checks including Purchase Checks, Convenience Checks, Special Transfer Checks and other similar check(s) that we may send to you. When we provide you with account access checks, we'll tell you whether they will be treated as purchases, cash advances or special transfers. Unless we tell you otherwise, Convenience Checks will always be treated as cash advances.

You agree that we are not responsible if anyone refuses to honor your account. If you do not use your account, you may cancel it by returning your card(s) and account access checks to us within 30 days after you receive them.

**Cash Equivalent Transactions.** If such advances are an option for your account, you can use your account to purchase items that are directly convertible to cash. These cash equivalent transactions will be treated as cash advances and will be billed to the cash advance segment of your account. Cash equivalent transactions include the purchase of wire transfer money orders, bets, lottery tickets, casino gaming chips, and other similar products or services.

**Your Credit Limit.** You agree to make purchases or obtain cash advances only up to your credit limit. If you have different credit limits for different segments of your account, you will be informed of the credit limits on your periodic statement. We may change your credit limit at any time, any limit decreases that is available for cash advances, or any available cash advances currently from your account. We may honor transactions in excess of your credit limit but such transactions will be covered by this Agreement.

**Making Payments.** You promise to pay us all amounts due including any finance charge and other charges due under the terms of this Agreement. Payments must be made in U.S. dollars. Payments made by a negotiable instrument, such as a check or a money order must be in the form acceptable to us and be drawn on a U.S. financial institution.

You need pay at least the minimum payment shown of your statement. However, you may pay more than the minimum payment or pay the balance in full. In any case, finance charges will continue to be assessed during billing periods that you carry a balance regardless of whether or not your statement shows a minimum payment due.

We can accept late payments or partial payments or checks and money orders marked "payment in full" or other similar language without losing any of our rights under this Agreement including our right to receive payment in full.

**Periodic Statement.** Each month you have a balance in your account, we will send you a statement showing all transactions in your account during the billing period. The billing period is the time from one statement closing date forward and including the next statement closing date. The statement closing date determines the month of a specific billing period. For example, you January billing period is the billing period with the statement closing date in January.

## Finance Charge Information.

**A. Minimum Finance Charge.** For each billing period your account is subject to a finance charge, a minimum total finance charge of $0.50 will be imposed. If the total finance charge resulting from the application your periodic rate(s) is less than $0.50, we will subtract that amount from the $0.50 minimum and the difference will be billed to the purchase segment of your account.

**B. Standby Finance Charge.** You may not avoid finance charge on cash advances and special transfers. You may avoid finance charge on new purchases, new special purchases, and on new other charges by paying the total new balance in full prior to the following statement closing date (this is the grace period) and minimum balance from the

---

period. Finance charge, when applicable, will be assessed as follows:

- ✗ Transactions made during the current billing period from transaction date.

- ✗ Undated transactions and transactions made with convenience checks from the date the transaction is processed in your account.

- ✗ Transactions made prior to the current billing period - from the first calendar day of the current billing period.

**C. Periodic Rates.** Beginning no later than February 1999 billing period, we determine the daily periodic rate by dividing the annual percentage rate by 365 and rounding it to the nearest 1/100,000th of 1%. (Until that time, we determine the daily periodic rate by dividing the annual percentage rate by 365 and rounding up to the nearest 1/1000th of 1%.) The rate may be different for each segment of your account (e.g. cash advance, purchase, special purchase, and special transfer if applicable for your account). You were told the daily periodic rate(s) when you opened your account. If your account has an introductory rate(s), the rate will remain in effect unless you are 30 days or more late in making a payment or are overdrawn in which case the periodic rate(s) may be changed to the preintroductory rate(s). If any other rate changes are made subsequent to your account opening, you will be advised of the new rate.

**D. Calculating Finance Charge.** We calculate finance charge each day by multiplying the balance of each segment of your account (e.g. cash advance, purchase, special purchase, and special transfer) by the daily periodic rate(s) that has been previously disclosed to you. Each day during the billing cycle, we apply the daily periodic rate for each segment of your account to the daily balance of each segment. We then add up the number of these daily calculations to arrive at your total periodic finance charge.

To get the separate daily balances for each segment of your account for the current billing cycle, each day we take the separate beginning balance for each segment and separately add any transactions and any periodic finance charges calculated on the previous days' balance for each segment. We then subtract any payments or credits made as of that day that are allocated to each segment. To give you the separate daily balance for each segment of your account. However, the daily balance for transactions is determined to be zero for each day of the current billing cycle if you paid in full the New Balance, if any, shown on your previous statement (or if your New Balance was zero or a credit amount).

**E. Cash Advance Fee Finance Charge.** If a cash advance fee applies to your account, you were told the fee when you opened your account. The fee will be charged each time you obtain a cash advance and will be added to the cash advance segment of your account. If the fee is charged subsequent to your account opening, you will be advised of the new fee.

**Other Charges.** The following charges may be billed to the purchase segment of your account: late charge if we do not receive your payment in time for it to be credited by the following statement closing date; overlimit charge if your account exceeds its assigned credit limit, even if we approved the overlimit amount; returned check charge if a check is returned to us for any reason, or if we cannot honor your account access checks for any reason, and copying charges for furnishing copies of transactions or statements unless required for billing dispute resolution. These charges will not be imposed if your billing address was in PR when your account was opened. The fee amounts were disclosed to you when you opened your account. If any of these fees are charged subsequent to your account opening, you will be advised of the new fee.

CAPONE
FSB

CONFIDENTIAL

Capital One Services, Inc.
P.O. Box 85133
Richmond, VA 23285-5133

**WELCOME TO CAPITAL ONE?** We are pleased to open your credit card account. This Agreement contains information about your account. Please read it and keep it for your records. In this Agreement the words "you", "your", and "yours" refer to each person who signed the application and to anyone else who uses the account in any way. The words "we", "us", and "our", mean Capital One F.S.B. and its successors or assigns. We can delay enforcing our rights under this Agreement without losing them.

**Using Your Account.** You can make purchases and obtain cash advances (if cash advances are an option for your account) by using your card, account number, and any account access checks (including Purchase Checks, Convenience Checks, Special Transfer Checks and other similar checks) that way we may send to you. When we provide you with account access checks, we will tell you whether they will be treated as purchases, cash advances, or special transfers. Unless we tell you otherwise, Convenience Checks will always be treated as cash advances. Your card or account cannot be used in connection with any Internet gambling transactions. Your card and account may only be used for valid and lawful purposes. If you use, or allow someone else to use, the card or account for any other purpose, you will be responsible for such use and may be required to reimburse Capital One and MasterCard International Incorporated or Visa USA, Inc., as applicable, for all amounts or expenses they pay as a result of such use. You agree that we are not responsible if anyone refuses to honor your account. If you do not use your account, you may cancel it by returning your card(s) and account access checks to us within 30 days after you receive them.

**Cash Equivalent Transactions.** If cash advances are an option for your account, you can use your account to purchase items that are directly convertible to cash. These cash equivalent transactions will be treated as cash advances and will be billed to the cash advance segment of your account. Cash equivalent transactions include the purchases of wire transfer money orders, bets, lottery tickets, casino gaming chips, and other similar products or services.

**Your Credit Limit.** You agree to make purchases or obtain cash advances only up to your credit limit. If you have different credit limits for different segments of your account, you will be informed of the credit limits on your periodic statement. We may change your credit limit at any time, may limit the amount that is available for cash advances, or may exclude cash advances entirely from your account. We may honor transactions in excess of your credit limit and those transactions will be covered by this Agreement.

**Making Payments.** You promise to pay us all amounts due resulting from the use of your account, including any finance charges and other charges due under the terms of this Agreement. Payments must be made in U.S. dollars. Payments made by a negotiable instrument such as a check or a money order must be in a form acceptable to us and be drawn on a U.S. financial institution.

You must pay at least the minimum payment shown on your statement. However, you may pay more than the minimum payment or pay the balance in full. In any case, finance charges will continue to be assessed during billing periods that you carry a balance regardless of whether or not your statement shows a minimum payment due.

We can accept late payments or partial payments or checks and money order marked "payment in full" or other similar language without losing any of my rights under this Agreement including or right to receive payment in full.

**Periodic Statement.** Each month you have a balance in your account, we will send you a statement showing all transactions billed to your account during the billing period. The billing period is the time from one statement closing date through and including the next statement closing date. The statement closing date determines the month of a specific billing period. For example, your January billing period with the statement closing date in January.

**Finance Charge Information.**

    A.  *Minimum Finance Charge.* For each billing period that your account is subject to a finance charge, a minimum total finance charge of $0.50 will be imposed. If the total finance charge resulting from the application your periodic rate(s) is less than $0.50, we will subtract that amount from the $0.50 minimum and the difference will be billed to the purchase segment of your account.

    B.  *Accruing Finance Charge.* You may not avoid finance charge on cash advances and special transfers. You may avoid finance charge on new purchases, new special purchases, and on new other charges by paying the total new balance in full prior to the following statement closing date (this is the grace period on new purchases). If you do not pay the entire new balance from the previous monthly statement, finance charge will accrue on the time entire previous new balance from the first day of the next billing period.

— ....... ....... to collect a debt.

Capital One Services, Inc.
P.O. Box 85133
Richmond, VA 23285-5133

Finance charge, when applicable, will be assessed as follows:

X   Transactions made during the current billing periods from transaction date.

X   Undated transactions and transactions made with convenience checks from the date the transaction is processed to your account.

X   Transactions made prior to the current billing period from the first calendar day of the current billing period.

C.   *Periodic Rates.* We determine the daily periodic rate by dividing the annual percentage rate by 365 and rounding it to the nearest 1/100,000th of 1% (Until that time, we determine the daily periodic rate by dividing the annual percentage rate by 365 and rounding up to the nearest 1/1000th of 1%) The rate may be different for each segment of your account (e.g. cash advance, purchase, special purchase, and special ... ... We were told the daily periodic rate(s) when you opened your account. If your account has an introductory rate(s), the rate(s) will remain in effect unless you are 30 days or more late in making a payment or are overlimit in which case the periodic rate(s) may be changed to the postintroductory rate(s). If any other rate changes are made subsequent to your account opening, you will be advised of the new rate.

D.   *Calculating Finance Charge.* We calculate finance charge each day by multiplying the balance of each segment of your account (e.g. cash advance, purchase, special purchase, and special transfer) by the daily periodic rate(s) that has been previously disclosed to you. Each day during the billing cycle, we apply the daily periodic rate for each segment of your account to the daily balance of each segment. We then add up the results of these daily calculations to arrive at your total periodic finance charge. To get the separate daily balances for each segment of your account for the current billing cycle, each day we take the separate beginning balance for each segment and separately add any transaction and any periodic finance charge calculated on the previous day's balance for each segment. We then subtract any payments or credits posted as of that day that are allocated to each segment. This gives us the separate daily balances for each segment of your account. However, the daily balance for purchases is

considered to be zero for each day of the current billing cycle if you paid in full the New Balance, if any, shown on your previous statement (or if your New Balance was zero or a credit amount).

E.   *Variable Rates.* Where and when variable rates apply to your account, the rate(s) may vary monthly based on changes in the highest one(1) month London Interbank Offered Rate(LIBOR) published in the "Money Rates" section of *The Wall Street Journal* on the 25th day of each month, or if not published on that day, on the most recent date of publication prior to that day; any changes will be effective with your Billing Period ending the following month. If the periodic rate(s) and corresponding annual percentage rate(s) increase, the finance charge will increase and your minimum payment may be greater.

F.   *Cash Advance Fee Finance Charge.* If a cash advance fee applies to your account. You were told the fee when you opened your account. This fee will be charged each time you obtain a cash advance and will be added to the cash advance segment of your account. If the fee is changed subsequent to your account opening, you will be advised of the new fee.

Other Charges. The following charges may be billed to the purchase segment of your account, unless otherwise specified: late charge if we do not receive your payment in time for it to be credited by the following statement closing date; overlimit charge if your account exceeds any temporary or permanent assigned credit limit, even if we approved the overlimit amount; returned check charge if a check is returned to us for any reason, or if we cannot honor your account even; checks for any reason; and copying charges for duplicate copies of transactions or statements unless required for billing dispute resolution. These charges will not be assessed if your billing address was in PR when your account was opened. The fee amounts were disclosed to you when you opened your account. If any of these fees are changed subsequent to your account opening, you will be advised of the new fee. We reserve the right to waive these fees without prior notification to you. Membership Fee. If your account has a membership fee, it was disclosed to you when you opened your account. The fee will be billed to the purchase segment of your account. If the fee is changed subsequent to your account opening, you will be advised of the change.

0058-21

**Membership Fee.** If your account has a membership fee, it was disclosed to you when you opened your account. The fee will be billed in the purchase segment of your account. If the fee is changed subsequent to your account opening, you will be advised of the change.

**Future Offers.** The terms of any future offer will be disclosed to you at the time the offer is made. If you accept an offer, the terms will become effective immediately unless otherwise specified in the offer.

**Default.** We may consider you to be in default under this Agreement if: (a) you fail to pay the minimum payment on time, (b) you exceed your credit limit, or (c) you pay us with funds that are returned for any reason. To the extent permitted by law, you may also be in default under this Agreement if: (1) you violate any of the other terms of this Agreement, or any of the terms of any other agreement with us or any of our affiliates, or (2) you make any false or misleading statements on your application, or (3) bankruptcy or other insolvency proceedings are instituted by you or against you. After you are in default (or after we give you any notice of or right to cure the default if required by law), we may render your account from new transactions, or close your account and demand immediate payment of the entire outstanding balance. To the extent permitted by law, you agree to pay all court costs and collection expenses incurred by us in the collection of any amount you owe us under this Agreement. If you default and we refer your account for collection to an attorney who is not our salaried employee, to the extent permitted by law, you agree to pay reasonable attorneys' fees. You also agree to pay any costs we may incur in retrieving your cards, including any costs we may incur by having your account placed on a restricted list.

**If You Close Your Account.** You can close your account by notifying us in writing. If you close your account, you must still pay all amounts you owe us and will be responsible for any charges incurred prior to giving us your notice. If there is a membership fee for your account, the fee will continue to be charged, to the extent permitted by law, until the account balance has been paid in full. You must also return all cards and transmit access checks to us, cancel all preauthorized billing arrangements and cease using your account.

If you want to stop an authorized user's access to your account, you must send us written notice along with the access card (if any) and any account access checks he or she may have. If you are unable to return that person's card and account access checks, and you advise us in writing to close your account, your account will be closed and both you and the joint cardholder, if any, may apply for a new account. If we close the account, you and the joint cardholder, if any, will still be liable, individually and together, for all amounts charged to your account.

**If We Cancel Your Account or Suspend Credit Privileges.** We may at any time, with or without cause and without advance notice, terminate this Agreement and/or temporarily or permanently suspend your credit privileges. This includes, but is not limited to, situations where you have violated this Agreement or where we have reason to doubt your creditworthiness (for example, if you pay us with insufficient funds checks on, more than an occasional basis). Your obligations under this Agreement continue after your rights to obtain credit have been terminated or suspended. We may delay in enforcing our rights under this Agreement without losing them.

**Changes in Terms.** We may amend or change any part of your Agreement, including the periodic rate and other charges, or add or remove requirements at any time. If we do so, we will give you notice if required by law of such amendment or change. Changes to the annual percentage rate(s) will apply to your account balance from the effective date of the change, whether or not for account balance includes future billed to the account before the change date and whether or not you continue to use the account. Changes to fees and other charges will apply to your account from the effective date of the change.

**Applicable Law.** This Agreement will be governed by Virginia law and Federal law.

**Severability.** The invalidity of any provision of this Agreement shall not affect the validity of any other provision.

**Lost or Stolen Cards or Account Access Checks.** If your cards or account access checks are lost or stolen or if someone else may be using them without your permission, notify us at once by calling the telephone number shown on the front of your periodic statement. Your liability for unauthorized use of your cards or account access checks will not exceed $50.00. You will not be liable for unauthorized use that occurs after you notify us.

**Your Billing Address.** You agree to give us written notice of any change in your billing address at least 10 days before the change. Changes may be written in the space provided on the statement (on portion of your periodic statement or may be sent to the following address: Capital One, P. O. Box 25015, Richmond, VA 23235-5015. If your account has joint account or if more than one person is permitted to use it, you agree that all notices regarding the account may be sent solely to the address shown on our billing records.

**Communications.** We may call you (using live operators, automatic dialing devices, or recorded messages) at home or work and those calls will not be considered unsolicited. We may monitor or record any calls we make or receive. We may release information to others regarding the status or history of your account. We may make inquiries of third parties in connection with maintaining and collecting your account, and you authorize such third parties to release information about you to us.

**Cardholder Benefits.** Cardholder benefits may be changed or terminated without notice. The benefits may be provided by third parties; we are not liable for such benefits or for the actions or omissions of the third parties.

**U.S. Currency.** If you make a purchase or cash advance in foreign currency, the transaction will be converted into U.S. Dollars using Visa or MasterCard regulations and Visa or MasterCard may charge you a conversion fee. The rate in effect on the conversion date may differ from the rate used on the transaction date.

Capital One Services, Inc.
P.O. Box 85133
Richmond, VA 23285-5133

apply to your account balance from the effective date of the change, whether or not the account balance included items billed to the account before the change date and whether or not you continue to use the account. Changes to fees and other charges will apply to your account from the effective date of the change.

**Applicable Law.** This Agreement will be governed by Virginia law and Federal law.

**Severability.** The invalidity of any provision of this Agreement shall not affect the validity of any other provision.

**Lost or Stolen Card or Account Access Checks.** If your cards or account access checks are lost or stolen or if someone else may be using them without your permission, notify us at once by calling the telephone number shown on the front of your periodic statements. Your liability for unauthorized use of your cards or account

access checks will not exceed $50.00. You will not be liable for unauthorized use that occurs after you notify us.

**Your Billing Address.** You agree to give us written notice of any changes in your billing address at least 10 days before the change. Changes may be written in the space provided on the remittance coupon portion of your periodic statement or may be sent to the following address: Capital One, P.O. Box 85015, Richmond, VA 23285-5015. If your account is a joint account or if more than one person is permitted to use it, you agree that all notices regarding the account may be sent solely to the address shown on our billing records.

**Communications.** We may call you (using live operators, automatic dialing devices, or recorded messages) at home or work and these calls will not be considered unsolicited. We may monitor or record any calls we make or receive. We may release information to others regarding the status or history of your account. We may make inquiries of third parties in connection with maintaining and collecting your account, and you authorize such third parties to release information about you to us.

**Cardholder Benefits.** Cardholder benefits may be changed or terminated without notice. The benefits may be provided by third parties; we are

not liable for such benefits or for the actions or omissions of the third parties.

**U.S. Currency.** If you make a purchase or cash advance in foreign currency, the transaction will be converted into U.S. Dollars using Visa or MasterCard regulations and Visa or MasterCard may charge you a conversion fee. The rate in effect on the conversion date may differ from the rate used on the transaction date.

Capital One is a federally registered service mark of Capital One Financial Corporation.

CUST
800 955 7070
BUSN
804 967 1000

## Capital One

Capital One Services, Inc.
P.O. Box 85133
Richmond, VA 23285-5133

**Future Offers.** The terms of any future offer will be disclosed to you at the time the offer is made. If you accept an offer, the terms will become effective immediately unless otherwise specified in the offer.

**Default.** We may consider you to be in default under this Agreement if: (a) you fail to pay the minimum payment on time, (b) you exceed your credit limit, or (c) you pay us with funds that are returned for any reason. To the extent permitted by law, you may also be in default under this Agreement if: (1) you violate any of the other terms of this Agreement, or any of the terms of any other agreement with us or any of our affiliates, or (2) you made any false or misleading statements on your application, or (3) bankruptcy or other insolvency proceedings are instituted by you or against you. After you are in default (or after we give you any notice of our right to cure the default if required by law), we may restrict your account from new transaction, or close your account and demand immediate payment of the entire outstanding balance. To the extent permitted by law, you agree to pay all court costs and collection expenses incurred by us in the collection of any amount you owe us under this Agreement. If you default and we refer your account for collection to an attorney who is not our salaried employee, to the extent permitted by law, you agree to pay reasonable attorneys' fees. You also agree to pay any costs we may incur in retrieving your cards, including any costs we may incur by having your account placed on a restricted list.

**If You Close Your Account.** You can request to close your account by notifying us in writing. You must return all card and account access checks to us, cancel all preauthorized billing arrangements, and cease using your account. If you do not cancel preauthorized billing arrangements, we will consider receipt of a charge your authorization to reopen your account. Additionally, your account will not be closed until you pay all amounts you owe us including any transactions you have authorized, finance charges, past due fees, overlimited fees, returned check fees, cash advance fees and any other fees assessed to your account. You are responsible for these amounts whether they appear on your account at the time you request to close the

account or they are incurred subsequent to your request to close the account. This may result in charges appearing on your account after you have requested the account to be closed or the reopening of your account if it has already been closed. For example, if you authorized a purchase from a merchant and we receive the transaction from the merchant and we receive the transaction from the merchant after your account has been closed, your account will be reopened, the amount of the charge will be added to your account, and you will be responsible for payment.

If there is a membership fee for your account, the fee will continue to be charged, to the extent permitted by law, until the account balance has been paid in full as defined above. If you want to stop an authorized user access to your account, you must send us written notice along with the users card (if any) and any account access checks he or she may have. If you are unable to return that person's card and account access checks, and you advise us in writing to close your account, your account will be closed and both you and the joint cardholder, if any, may apply for a new account. If we close the account, you and the joint cardholder, if any, will still be liable, individually and together, for all amounts charged to your account.

**If We Close Your Account or Suspend Credit Privileges.** We may at any time, with or without cause and without advance notice, terminate this Agreement and/or temporarily or permanently suspend your credit privileges. This include, but is not limited to, situations where you have violated this Agreement or where we have reason to doubt your creditworthiness (for example, if you pay us with insufficient funds checks on more than an occasional basis). Your obligations under this Agreement continue after your rights to obtain credit have been terminated or suspended. We may delay in enforcing our rights under this Agreement without losing them.

**Changes In Terms.** We may amend or change any part of your Agreement, including the periodic rates and other charges, or add or remove requirements at any time. If we do so, we will give you notice if required by law of such amendment or change. Notice will be mailed to the last billing address indicated in our records. Changes to the annual percentage rate(s) will



523700-04

For **Capital**One*

NOT A CHECK
No Cash Value

MUST BE
RECEIVED BY: **MAR. 31, 2001**

VALUE UP TO: **\*\*Thirty-five Dollars in FREE Magazine Rewards \*\*** | **$35.00**

☑ SUBSCRIPTION SERVICES

ISSUED TO:
Indicate any change of address to right.

MARIO K KASALO
1902 W. AINSLIE AVE
APT #1
CHICAGO IL 60640-8320
4121 7418 6171 5071

AUTHORIZED SIGNATURE

SPECIMEN • NON-NEGOTIABLE

**IMPORTANT NEWS:** You are entitled to select up to 3 FREE MAGAZINE REWARDS valued up to the amount shown on the Voucher above. Redeem your Voucher right now for any of the Rewards listed on the reverse. Any portion of the maximum Reward value that remains unused will expire and cannot be redeemed for cash or credit. Details on reverse. This Voucher expires 3/31/01. Complete and return it with your Capital One® credit card payment.

**Capital**One*

VISA ACCOUNT
4121-7418-6171-5071

JAN 21 – FEB 20, 2001
Page 1 of 1

### Account Summary

| | |
|---|---|
| Previous Balance | $220.51 |
| Payments, Credits and Adjustments | $1,020.70 |
| Transactions | $964.00 |
| Finance Charges | $8.56 |
| | |
| New Balance | $172.37 |
| Minimum Amount Due | $10.00 |
| Payment Due Date | March 20, 2001 |
| | |
| Total Credit Line | $300 |
| Total Available Credit | $127.63 |
| Credit Line for Cash | $300 |
| Available Credit for Cash | $127.63 |

*At your service*
To call Customer Relations or to report a lost or stolen card:
1-800-903-3637

Send payments to:
Attn: Remittance Processing
Capital One Services
P.O. Box 60000
Seattle, WA 98190-6000

Send inquiries to:
Capital One Services
P.O. Box 85015
Richmond, VA 23285-5015

### Payments, Credits and Adjustments

| | | | |
|---|---|---|---|
| 1 | 21 JAN | PAST DUE FEE ADJUSTMENT | $25.00- |
| 2 | 21 JAN | OVERLIMIT FEE ADJUSTMENT | 25.00- |
| 3 | 24 JAN | PAYMENT RECEIVED - THANK YOU | 300.00- |
| 4 | 02 FEB | FRAUD ADJUSTMENT - PURCHASE | 130.00- |
| 5 | 02 FEB | FRAUD ADJUSTMENT - PURCHASE | 80.00- |
| 6 | 02 FEB | FRAUD ADJUSTMENT - PURCHASE | 100.00- |
| 7 | 02 FEB | FRAUD ADJUSTMENT - PURCHASE | 170.00- |
| 8 | 02 FEB | FRAUD ADJUSTMENT - PURCHASE | 45.00- |
| 9 | 02 FEB | FRAUD ADJUSTMENT - PURCHASE | 100.00- |
| 10 | 02 FEB | ADJ- PURCHASE - FINANCE CHARGE | .70- |
| 11 | 14 FEB | ECX CREDIT | 45.00- |

### Transactions

| | DATE | | |
|---|---|---|---|
| 12 | 22 JAN | INTERSAFE GLOBAL MONTREAL PQ | $80.00 |
| 13 | 24 JAN | ECX TORONTO ON | 45.00 |
| 14 | 25 JAN | CFI 24 MONTREAL PQ | 100.00 |
| 15 | 25 JAN | CFI 24 MONTREAL PQ | 170.00 |
| 16 | 25 JAN | CFI 24 MONTREAL PQ | 100.00 |
| 17 | 25 JAN | CFI 24 MONTREAL PQ | 130.00 |
| 18 | 08 FEB | ROMANSOFT LTD 3575866001 | 300.00 |
| 19 | 20 FEB | MEMBERSHIP FEE | 39.00 |
| 20 | 20 FEB | CASH ADVANCE FEE - - FINANCE CHARGE | 7.50 |

As a valued Capital One customer we want you to know that your account number has changed. After you activate your new card, you will need to give your new account number to those merchants with whom you have set up automatic billing. This will ensure that the payments you have arranged will continue to be billed directly to your Capital One card, saving you time and money on postage. Once again, thank you for choosing Capital One.

### Finance Charges

*Please see reverse side for important information*

| | Balance rate applied to | Periodic rate | Corresponding APR | FINANCE CHARGE |
|---|---|---|---|---|
| PURCHASES | 8.00 | .05562% D | 20.30% | 8.00 |
| CASH | 861.38 | .05562% D | 20.30% | 81.06 |

**ANNUAL PERCENTAGE RATE** applied this period **34.24%**

20823M

▼ **PLEASE RETURN PORTION BELOW WITH PAYMENT.** ▼

**Capital**One*

0000000 0 4121741861715071 00 0172370300000010004

| | |
|---|---|
| New Balance | $172.37 |
| Minimum Amount Due | $10.00 |
| Payment Due Date | March 20, 2001 |

Total enclosed $ [ ]

*Please print address changes below using blue or black ink*

| Street | | Apt. # |
|---|---|---|
| City | State | ZIP |
| Home Phone | Alternate Phone | |

Capital One Services
P.O. Box 60000
Seattle, WA 98190-6000



MARIO K KASALO
1902 W. AINSLIE AVE
APT #1
CHICAGO IL 60640-3320



**Capital**One™

Capital One Services, Inc.
P.O. Box 26074
Richmond, VA 23260

March 15, 2001

MARIO K KASALO
1902 W. AINSLIE AVE
APT #1
CHICAGO, IL 60640-3320

RE: 4121741762401847
Creditor: Capital One Bank

Dear MARIO KASALO:

Thank you for contacting Capital One in regard to potential fraudulent charges/transactions on the account number referenced above. To date, we have taken the following actions:

We have:

- Placed this account on hold to prevent any further authorization of charges.
- Transferred this account to a new account number.
- Transferred the entire account balance (including fraudulent charges) to your new account number. Your new account was then credited for the fraudulent charges indicated.
- Issued new credit cards to you (allow 7-10 business days for delivery), provided your account was in good standing and you instructed us to issue the new cards.

Currently, *Capital One's Fraud Recovery Group* is investigating your claim of fraudulent activity. In order to process this claim more quickly, please:

- Destroy all credit card and/or checks associated with the account that has potential fraudulent activity.
- Review your next billing statement for any additional fraud charges.
- Complete the Fraud Information Form. This form is a vital part in the investigation process. By signing and returning this document you are confirming there was fraudulent use of your credit card account. If Capital One does not receive this form from you, Capital One has a reduced ability to recover the loss from the merchant(s) or suspect(s) involved. *In the event Capital One does not receive the Fraud Information Form and is unable to validate the fraudulent use of your credit card account through a reasonable investigation, all charges will be applied back to your account.*

When completing the Fraud Information Form, Please be sure to include;

- Specific information regarding the merchant name(s), dollar amounts, and dates.
- Any person(s) or suspect(s) involved.
- Signatures of ALL authorized users(all authorized users must sign the Fraud Information Form).

Please return the Fraud Information Form in the envelope provided as soon as possible or fax the completed form to us at the number listed below.

While the investigation process of your account has begun, it may take up to 120 days to complete. The Capital One Fraud Recovery Group may contact you during some point in the investigation if further assistance is needed to process your claim. If you have any questions or concerns, please don't hesitate to contact us at the number listed below.

Thank you for your cooperation. We will resolve this matter as quickly as possible.

Sincerely,

Fraud Operations
Phone # 1-800-215-1921
Fax # (800) 999-4350

Enclosures





**Experian**
A world of insight

| Logout | Report Summary | Potentially Negative Items | Accounts in Good Standing | Requests for Your Credit History | Personal Information | Your Personal Statement | Get Credit Monitor |

## Potentially Negative Items or Items for Further Review

❓ What does potentially negative or items for further review mean?

❓ What if I feel there is a

**Add Triple Alert℠ Credit Monitoring**

**GET IT NOW!**

Experian credit report prepared for
**MARIO K KASALO**
Your report number is
**4073819146**

Report date: **January 17, 2008**

🔧 **Credit Report Tools**
Print your report
Credit Education
Know your rights
Credit Fraud Center

**Get the Score!**

**GET IT NOW!**

### Item Detail

**CAP ONE BK**

**Dispute this**

**Status Details:**
This account is scheduled to continue on record until Feb 2008.
This item was verified on Jun 2007 and remained unchanged.

**Address:**
PO BOX 85015
RICHMOND, VA 23285
(800) 903-3637

**Account Number:**
412174186171....

**Status:**
Account charged off/Past due 180 days. $1,595 written off. $3,276 past due as of Jan 2008.

| | | |
|---|---|---|
| **Date Opened:** 01/2000 | **Type:** Revolving | **Credit Limit:** NA |
| **Date of Status:** 05/2002 | **Terms:** NA | **High Balance:** $3,276 |
| **Reported Since:** 01/2000 | **Monthly Payment:** $0 | **Recent Balance:** $3,276 |
| **Last Reported Date:** 01/2008 | **Responsibility:** Individual | **Recent Payment:** $0 |

**Your Statement:**
NA

**Add a statem**

**Creditor's Statement:**
Account closed at credit g



**Account History:**
Charge Off as of Jan 2008, Nov 2007, Oct 2007, Sep 2007, Aug 2007, Jul 2007, May 2007, Apr 200
2007, Feb 2007, Jan 2007, Dec 2006, Nov 2006, Oct 2006, Sep 2006, Aug 2006, Jul 2006, Jun 200
2006, Apr 2006, Mar 2006, Feb 2006, Dec 2005, Nov 2005, Oct 2005, Sep 2005, Aug 2005, Jul 200
2005, May 2005, Jan 2005, Oct 2003 to Dec 2004, Apr 2003, Jan 2003, Nov 2002, Oct 2002, Aug 2
2002, Apr 2002
180 days as of Oct 2001
150 days as of Sep 2001
120 days as of Aug 2001
90 days as of Jul 2001
60 days as of Jun 2001
30 days as of May 2001

**Balance History:**
11/2007 $3,234
10/2007 $3,213
09/2007 $3,192
08/2007 $3,170
07/2007 $3,149
05/2007 $3,107
04/2007 $3,091
03/2007 $3,036
02/2007 $3,009
01/2007 $2,987
12/2006 $2,753
11/2006 $2,731
10/2006 $2,710
09/2006 $2,689
08/2006 $2,667
07/2006 $2,647
06/2006 $2,625
05/2006 $2,604
04/2006 $2,583
03/2006 $2,563
02/2006 $2,542

**Limit High Balance History:**
Between Nov 2007 and Nov 2007, your credit limit/high balance was $3,234
Between Oct 2007 and Oct 2007, your credit limit/high balance was $3,213
Between Sep 2007 and Sep 2007, your credit limit/high balance was $3,192
Between Aug 2007 and Aug 2007, your credit limit/high balance was $3,170
Between Jul 2007 and Jul 2007, your credit limit/high balance was $3,149
Between May 2007 and May 2007, your credit limit/high balance was $3,107
Between Apr 2007 and Apr 2007, your credit limit/high balance was $3,091
Between Mar 2007 and Mar 2007, your credit limit/high balance was $3,036
Between Feb 2007 and Feb 2007, your credit limit/high balance was $3,009
Between Jan 2007 and Jan 2007, your credit limit/high balance was $2,987
Between Dec 2006 and Dec 2006, your credit limit/high balance was $2,753
Between Nov 2006 and Nov 2006, your credit limit/high balance was $2,731
Between Oct 2006 and Oct 2006, your credit limit/high balance was $2,710
Between Sep 2006 and Sep 2006, your credit limit/high balance was $2,689
Between Aug 2006 and Aug 2006, your credit limit/high balance was $2,667
Between Jul 2006 and Jul 2006, your credit limit/high balance was $2,647
Between Jun 2006 and Jun 2006, your credit limit/high balance was $2,625
Between May 2006 and May 2006, your credit limit/high balance was $2,604
Between Apr 2006 and Apr 2006, your credit limit/high balance was $2,583
Between Mar 2006 and Mar 2006, your credit limit/high balance was $2,563
Between Feb 2006 and Feb 2006, your credit limit/high balance was $2,542

©Experian 2008. All rights reserved.
Experian and the marks used herein are service marks or registered trademarks of Experian.
Other product and company names mentioned herein may be the trademarks of their respective owners.

| | TransUnion | Experian | Equifax |
|---|---|---|---|
| Account #: | | 0660** | |
| Condition: | | Transferred | |
| Balance: | | $0 | |
| Type: | | Charge account | |
| Pay Status: | | Unknown | |

**Two-Year payment history**

| TransUnion | NONE REPORTED |
|---|---|
| Experian | |
| Equifax | NONE REPORTED |

sep oct nov dec '97 feb mar apr may jun jul aug sep oct nov dec '98 feb mar apr may jun jul aug

## CAP ONE BK

| | TransUnion | Experian | Equifax |
|---|---|---|---|
| Account #: | | 41217418**** | 41217418**** |
| Condition: | | Derogatory | Derogatory |
| Balance: | | $3276 | $3276 |
| Type: | | Credit Card | |
| Pay Status: | | Collection/Chargeoff | Collection/Chargeoff |

**Two-Year payment history**

TransUnion — NONE REPORTED

Experian
feb mar apr may jun jul aug sep oct nov dec '07 feb mar apr may jun jul aug sep oct nov dec '08

Equifax
'06 feb mar apr may jun jul aug sep oct nov dec '07 feb mar apr may jun jul aug sep oct nov dec

## CAP 1 BANK

| | TransUnion | Experian | Equifax |
|---|---|---|---|
| Account #: | | | 41217416**** |
| Condition: | | | Closed |
| Balance: | | | $0 |
| Type: | | | |
| Pay Status: | | | Current |

**Two-Year payment history**

| TransUnion | NONE REPORTED |
|---|---|
| Experian | NONE REPORTED |
| Equifax | |

aug sep oct nov dec '02 feb mar apr may jun jul aug sep oct nov dec '03 feb mar apr may jun jul

## CITI

| | TransUnion | Experian | Equifax |
|---|---|---|---|
| Account #: | 54241807**** | 54241807**** | 54241807**** |
| Condition: | Open | Open | Open |
| Balance: | $12961 | $12767 | $12961 |
| Type: | Credit Card | Credit Card | Credit Card |
| Pay Status: | Current | Current | Current |

**Two-Year payment history**

TransUnion
dec '06 feb mar apr may jun jul aug ... may jun jul aug sep oct nov

Closed

| Account Number | Date Opened | High Credit | Credit Limit | Terms Duration | Terms Frequency | Mnths Revd | Activity Description | Creditor Classification |
|---|---|---|---|---|---|---|---|---|
| 41217418617?* | 01/2000 | | $300 | | Monthly | 1 | Closed | |

| Date As of | Balance | Date of Last Payment | Actual Payment Amount | Scheduled Payment Amount | Date of 1st Delinquency | Date of Last Activity | Date Maj. Del. 1st Rptd | Charge Off Amount | Deferred Pay Start Date | Balloon Pay Amount | Balloon Pay Date | Date Closed |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 02/2008 | $3,298 | | | | 05/2001 | | | | | | | |

| Date Reported | Amount Past Due | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 02/2008 | $3,298 | | | | | | | | | | | |

Current Status - Charge Off; Type of Account - Revolving; Type of Loan - Credit Card; Whose Account - Individual Account; ADDITIONAL INFORMATION - Consumer Disputes - Reinvestigation in Process;

High Credit Column is Credit Limit;

**Account History**

With Status Codes
L

| Account Number | Date Opened | High Credit | Credit Limit | Terms Duration | Terms Frequency | Mnths Revd | Activity Description | Creditor Classification |
|---|---|---|---|---|---|---|---|---|
| 517805255831* | 08/2004 | $428 | $300 | | Monthly | 40 | | |

| Date As of | Balance | Date of Last Payment | Actual Payment Amount | Scheduled Payment Amount | Date of 1st Delinquency | Date of Last Activity | Date Maj. Del. 1st Rptd | Charge Off Amount | Deferred Pay Start Date | Balloon Pay Amount | Balloon Pay Date | Date Closed |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 01/2008 | $0 | 11/2007 | $47 | | | 11/2007 | 01/2008 | $1,487 | | | | Closed |

Current Status - Pays As Agreed; Type of Account - Revolving; Type of Loan - Credit Card; Whose Account - Individual Account; ADDITIONAL INFORMATION - Credit Card; Amount in Consumers Request, Closed or Paid Account/Zero Balance; Credit Card;

High Credit Column is Credit Limit;

| Account Number | Date Opened | High Credit | Credit Limit | Terms Duration | Terms Frequency | Mnths Revd | Activity Description | Creditor Classification |
|---|---|---|---|---|---|---|---|---|
| 688964131155* | 11/2002 | $1,389 | $2,700 | | Monthly | 32 | Paid and Closed | |

| Date As of | Balance | Date of Last Payment | Actual Payment Amount | Scheduled Payment Amount | Date of 1st Delinquency | Date of Last Activity | Date Maj. Del. 1st Rptd | Charge Off Amount | Deferred Pay Start Date | Balloon Pay Amount | Balloon Pay Date | Date Closed |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 01/2008 | $0 | 12/2007 | $615 | | | 12/2007 | | | | | | 05/2007 |

Current Status - Pays As Agreed; Type of Account - Revolving; Type of Loan - Credit Card; Whose Account - Authorized User; ADDITIONAL INFORMATION - Account Closed At

High Credit Column is Credit Limit;

| Account Number | Date Opened | High Credit | Credit Limit | Terms Duration | Terms Frequency | Mnths Revd | Activity Description | Creditor Classification |
|---|---|---|---|---|---|---|---|---|
| 909267B012* | 05/2003 | $6,323 | $5,900 | | Monthly | 55 | | |

| Date As of | Balance | Date of Last Payment | Actual Payment Amount | Scheduled Payment Amount | Date of 1st Delinquency | Date of Last Activity | Date Maj. Del. 1st Rptd | Charge Off Amount | Deferred Pay Start Date | Balloon Pay Amount | Balloon Pay Date | Date Closed |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 01/2008 | $5,124 | 01/2008 | $500 | $103 | | 01/2008 | | | | | | |

Current Status - Pays As Agreed; Type of Account - Revolving; Type of Loan - Credit Card; Whose Account - Authorized User; ADDITIONAL INFORMATION - Credit Card; Amount in

High Credit Column is Credit Limit;

| Account Number | Date Opened | High Credit | Credit Limit | Terms Duration | Terms Frequency | Mnths Revd | Activity Description | Creditor Classification |
|---|---|---|---|---|---|---|---|---|
| 524180771741* | 02/2007 | $0 | $16,000 | | Monthly | 11 | | |

| Date As of | Balance | Date of Last Payment | Actual Payment Amount | Scheduled Payment Amount | Date of 1st Delinquency | Date of Last Activity | Date Maj. Del. 1st Rptd | Charge Off Amount | Deferred Pay Start Date | Balloon Pay Amount | Balloon Pay Date | Date Closed |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 05/2008 | $12,767 | | | $191 | | 12/2007 | | | | | | Closed |

Current Status - Pays As Agreed; Type of Account - Revolving; Type of Loan - Credit Card; Whose Account - Authorized User; ADDITIONAL INFORMATION - Credit Card; Amount in

High Credit Column is Credit Limit;

( Continued On Next Page )

80440KT3RAPP00001#989- 6068 - 7602 - AS

LAW OFFICES OF
**WELTMAN, WEINBERG & REIS CO., L.P.A.**
525 Vine Street, Suite 800
Cincinnati, OH 45202
(513) 723-6095    (800) 589-8506
Mon-Thurs 8am-9pm, Fri 8am-5pm, & Sat 8am-12pm EST

September 13, 2006      5525728/H13/323/4444724/1038

MARIO K KASALO
6906 LOREL AVE
SKOKIE, IL 60077

CAPITAL ONE BANK
Account No. 4121741861715071
Balance Due as of September 13, 2006: $2,704.67

Dear MARIO K KASALO:

Please be advised that this law firm has been retained to collect the
outstanding balance due and owing on this account. As of the date of
this letter you owe the amount listed above. Therefore, it is
important that you contact our office to discuss an appropriate
resolution for this matter.

This law firm is a debt collector attempting to collect this debt for
our client and any information obtained will be used for that purpose.
Unless you dispute the validity of this debt, or any
portion thereof, within thirty (30) days of receipt of this letter,
we will assume that the debt is valid. If you notify us in writing
within the thirty (30) day period that the debt, or any portion
thereof, is disputed, we will obtain verification of the debt and mail
you a copy. If you request in writing within the thirty (30) day
period, we will provide you with the name and address of the original
creditor if different from the current creditor.

Thank you for your attention to this matter.

                    Sincerely,

                    Weltman, Weinberg & Reis Co., L.P.A.



9/26/06

LAW OFFICES OF WELTMAN WEINBERG & REIS
525 VINE STREET, SUITE 800
CINCINATTI, OH 45202

RE: CAPITAL ONE BANK DEBT
ACCT # 41217418617150711

DEAR SIR OR MADAM,

I AM WRITING THIS LETTER TO DISPUTE
THE DEBT YOU ALLEGE I OWE IN
YOUR 9/13/2006 LETTER ADDRESSED
TO ME. FIRST, YOU SHOULD MAKE NOTE
OF MY PROPER ADDRESS.

MARIO KASALO
6833 N KEDZIE AVE 1208
CHICAGO, IL 60645

PLEASE PROVIDE ME VERIFICATION OF THIS
DEBT, AS IT HAS BEEN DISPUTED
AS FRAUDULENT SINCE IT WAS
INCURRED. ALSO PROVIDE ME THE
NAME AND ADDRESS OF THE ORIGINAL
CREDITOR. I HAVE INCLUDED A COPY OF YOUR
9/13/06 LETTER AS A COURTESY.

MARIO KASALO
telephone 773 573 9199



## Credit Inquiries

This section contains the names of those who obtained a copy of your credit report. Inquiries remain on your report up to two years.



| | Equifax | Experian | TransUnion |
|---|---|---|---|
| HSBC NV<br>Banks and S&Ls<br>Sep 18, 2006 | | | ✓ |
| WELTMAN WEIN<br>Collection services<br>Sep 15, 2006 | | | ✓ |
| WELTMAN,WEIN<br>Collection services<br>Sep 14, 2006 | | | ✓ |
| NCO GRP<br>Collection services<br>Jul 13, 2006 | | | ✓ |
| NCO GRP<br>Collection services<br>Jul 5, 2006 | | | ✓ |
| ASSET ACCPT<br>Finance, personal<br>Jun 2, 2006 | | | ✓ |
| ARROW FINANC<br>Collection services<br>Mar 29, 2006 | | | ✓ |
| TRUELOGIC FI<br>Collection services | | | |

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
### MUNICIPAL DEPARTMENT, FIRST DISTRICT

CAPITAL ONE BANK

     Plaintiff,

v.

MARIO K KASALO

     Defendant,

No.

Amount Claimed: $3,162.29

Return Date: <u>JANUARY 09 2007</u>

## COMPLAINT

NOW COMES, Plaintiff, and claims as follows:

1. That CAPITAL ONE BANK ("Plaintiff") is a corporation duly licensed to transact business in the state of Illinois.

2. That Plaintiff issued credit card number 4121741861715071 to the Defendant (s) accepting by the use thereof, the terms of the card holder agreement.

3. That the Defendant (s) caused various charges to be made pursuant to the issuance thereof, and are indebted to Plaintiff in the sum of $2812.29, plus attorneys fees in the amount of $350.00, making a total of $3,162.29 . That there is an account stated; Defendant (s) although often requested, have failed and refused to pay said principal amount.

WHEREFORE, Plaintiff prays for judgment against the Defendant (s) in the sum of $3,162.29 , plus interest and costs of suit, as provided by statute.

BY: _____

                   **Attorney for Plaintiff**

WELTMAN, WEINBERG & REIS CO., L.P.A.

10 South LaSalle, Suit 900

Chicago, Illinois 60603

(312) 782-9676

Atty. No. 31495

THE LAW OFFICES OF
# J. NICOLAS ALBUKERK
3025 W. 26TH ST., FL.2
CHICAGO, ILLINOIS 60623
TEL: 773.847.2600
FAX: 773.847.0330
E-MAIL: NICK@ALBUKERK.COM

J. NICOLAS ALBUKERK                                        OF COUNSEL
                                                          KAMELI & ASSOCIATES

May 29, 2007

**VIA FAX # 312-782-4201**

Attention: John Pucin
Law Offices of Weltman, Weinberg, & Reis, LLP
10 S LaSalle, Ste 900
Chicago, Illinois 60603

RE: Capital One v. Mario Kris Kasalo
Case#: 06-M1-195014

Dear Mr. Pucin,

Despite repeated requests sent by our Office to Mr. Feingold and yourself over the
last week, your Office still has not faxed us a copy of the Complaint filed in this
cause. Thus, we are reiterating our request that you promptly provide to us, via
fax and mail, a complete and legible copy of the Complaint. This request is being
made within the spirit of Rule 201(k).

Moreover, we still have not received a copy of the validation documents Mr.
Kasalo requested of you in September of last year, despite the assurance Mr.
Feingold gave our Office 7 weeks ago, indicating that said documents were
forthcoming and would be provided to us upon receipt by your Office.

Please finally be advised that, due to your firm's continuing insistence in
attempting to sue on and collect a void and illegal debt, we will promptly be filing
Defendant's Motion to Dismiss and Rule 137 Motion for Sanctions, and will be
seeking attorney's fees for the same.

Sincerely,

J. Nicolas Albukerk

Encl.
JNA/bg





seattletimes.com

Saturday, October 14, 2006 - 12:00 AM

*Permission to reprint or copy this article or photo, other than personal use, must be obtained from The Seattle Times. Call 206-464-3113 or e-mail resale@seattletimes.com with your request.*

# U.S. outlaws Internet gambling

**By Frank Ahrens**
*The Washington Post*

WASHINGTON — Placing bets over the Internet was effectively criminalized by the federal government Friday, as lawmakers work to eliminate an activity pursued by up to 23 million Americans who wagered an estimated $6 billion last year.

Attached to a port-security bill signed by President Bush on Friday was the Unlawful Internet Gambling Enforcement Act, which prohibits online gamblers from using credit cards, checks and electronic-fund transfers to place and settle bets.

The law leaves enforcement up to banks and other U.S. financial institutions, some of which fought the legislation.

The bill's sponsor, Rep. Robert Goodlatte, R-Va., said he opposes all gambling, citing its "ill effects on society," but particularly Internet gambling, which led him to draft the legislation. Senate Majority Leader Bill Frist, R-Tenn., attached Goodlatte's bill to the port-security bill to ensure its passage and Bush's signature.

While proponents decried the effects of gambling on society, opponents pointed to the popularity of Internet gambling and compared the new law to the Prohibition amendment of 1919, which led to the rise of illegal speakeasies and organized crime.

The new law is potentially crippling to a worldwide industry whose biggest customer has been the United States. Several online wagering businesses already have pulled out of the United States and some have collapsed, including publicly traded companies in Britain, where online betting is legal and regulated.

In the United States, the Justice Department and federal courts are unable to agree on whether Internet gambling is illegal.

The Justice Department maintains that the 1961 Wire Act, written to prohibit betting transactions via telephone, applies to the Internet.

Courts have disagreed, saying betting on sports teams over the Internet is illegal, but wagering on casino games, such as poker, is not. And though the Justice Department thinks off-track and online wagering on horse races is illegal, it has never prosecuted a case.

Internet gamblers typically set up accounts at offshore businesses, and place and settle bets using credit cards and checks that are converted in electronic currency, much as eBay users buy and sell items using PayPal.

Instead of targeting specific games, the new law seeks to block the financial transactions that fuel them.

The new law is shaking up the worldwide Internet gambling industry, with some comparing it to Congress banning the sale of Toyotas, BMWs and all other foreign vehicles in this country. Britain's Sportingbet, for example, said 62 percent of winning bets on its site came from the United States.

A major offshore e-currency company, FirePay of Britain, said it no longer will accept payments from U.S. customers. Sportingbet sold its U.S. online operations to an Antiguan company Friday for $1, five weeks after former company chairman Peter Dicks was arrested in New York when Customs officials found he was wanted in Louisiana on charges of illegal online gambling.

New York Gov. George Pataki, a Republican, refused to extradite Dicks to Louisiana and a federal judge cleared his return to England.

BetOnSports said Friday it would pull out of the United States and repay balances to customers here.

Copyright © 2007 The Seattle Times Company



Online NewsHour

REGION: North America
TOPIC: Business & Economy

TRANSCRIPT

Originally Aired: October 16, 2006

# President Bush Signs Law Banning Internet Gambling

President Bush's signing of the Unlawful Internet Gambling Enforcement Act bans the use of credit cards, checks, and electronic transfers to place bets on gambling websites on the Internet. Analysts discuss the implication of the recent law.



RealAudio | Download    Streaming Video

RAY SUAREZ: An estimated 8 million Americans made wagers online last year while playing poker, Blackjack, or betting on their favorite sports team, from the comfort of their homes and dorm rooms.

It was as simple as point and click: Log on to a gambling site; most are based outside the U.S. You would then set up an account, using a third-party company to manage the funds. Add credit card information and, within minutes, the gambling begins, at a virtual poker table in real time, spending and losing and sometimes winning real money.

The pastime may be over for many gamblers, since the president signed the Unlawful Internet Gambling Enforcement Act on Friday, a piece of legislation Congress quietly attached to a bill on port security.

The act prohibits Americans from using electronic funds transfers, credit cards, and checks in placing bets with gambling sites worldwide. The bill holds banks and credit companies responsible for enforcement of the law.

Several foreign online gambling businesses gave up their U.S. operations after the bill passed. Estimates put the value of the American online gaming market around $12 billion in 2005.

## Online betting remains open

RAY SUAREZ: Some analysis now on the impact of these changes, from two people familiar with the industry. Keith Whyte is the executive director of the National Council on Problem Gambling. And Lawrence Walters is an attorney who represents a number of online gambling companies.

And, Lawrence Walters, if you boot up today, and you go to your Internet browser, and seek out a gambling site because you want to play a few hands, what's different today from last week?

LAWRENCE WALTERS, Internet Gambling Law Attorney: You know, from the average bettor's perspective, there's not going to be much different, other than the fact that some of the larger and better known sites may no longer be accepting bets from U.S. citizens.

But your intro piece indicated that Americans are now going to be prohibited from betting online. That's not really the case: The bill has no impact on the individual player's activity.

The bill is centered on restricting certain financial transactions, requiring that banks identify and block transactions going through their servers and their systems, and requiring that the actual sites, the Internet gambling sites, stop and block these transactions. A lot of those are overseas, so the efficiency of that law is going to be in question.

But as far as the bettor, they can pop on the Internet and they can get on one of many different online sports betting or casino sites and still find a way to get the money to the right people to place the bet.

RAY SUAREZ: So one of the chief Senate proponents of this bill, the majority leader, Bill Frist, when he said, "For me as majority leader, the bottom line is simple: Internet gambling is illegal," he wasn't right?

LAWRENCE WALTERS: Not at that time, certainly. The Wire Act, which is the law that's most commonly identified as the law prohibiting Internet gambling, only restricted the operation of a sports betting Web site, arguably. It didn't have any impact on online casino games or online poker, which are, frankly, the most popular now on the Internet. It was restricted only to sports betting.

A few states have prohibited Internet gambling. And the federal government seems to take kind of a broad-brush approach and proclaim that all Internet gambling was illegal, when, in fact, the law had only been made applicable to sports betting.

Now that this new act has been passed, the situation is even more confused, because the law here seems to refer back to existing law: whatever was prohibited before is prohibited now. Plus, it restricts certain financial transactions. So this is one that the courts, I think, are going to have a field day with, and we won't really know what it does until some court takes it apart and tries to interpret it.

RAY SUAREZ: Keith Whyte, do you agree with Lawrence Walters that, for gamblers or prospective gamblers going online today, the field really hasn't changed very much, they aren't doing anything that's illegal?

KEITH WHYTE, National Council on Problem Gambling: I think, for casual gamblers, this bill does create some more barriers. But for both addicted gamblers and those that are really serious about it, they'll find a way, as Lawrence said.

I think the best way to sum up this bill is that it makes illegal what is illegal and it legalizes what is legal. So, in other words, this bill has a carve-out for any type of Internet gambling that is regulated by a state. It contains a specific carve-out for the racing industry to continue to offer online gambling.

So, really, the prohibition of this bill -- it's illegal to gamble on the Internet in states where it illegal to gamble on the Internet. And in states where it is legal or that might want to legalize it, it's perfectly allowable.

## Cutting off the flow of money

RAY SUAREZ: What about the restrictions on banks and credit card companies? Does it make it more difficult to have chips on your end of the table, whether you're playing roulette or Blackjack or poker?

KEITH WHYTE: Absolutely, because, you know, the bill is interesting, in that it doesn't make gambling on the Internet illegal. It makes funding your wager on the Internet illegal. So the transaction is -- the financial transaction is what is criminalized here, not necessarily the state of play.

But I assume, and as Lawrence says, that people will find a way to develop offshore accounts. If this was just gambling or even just gambling pornography, that would be one thing. But, in essence, this bill is saying to Americans: You can buy anything you want on the Internet, except gambling, and it's calling on the banks to try and enforce that.

Now, segregating out a gambling transaction from a non-gambling transaction, especially if that transaction has gone through a third party Web site, somebody overseas, I think is going to be very difficult.

RAY SUAREZ: Lawrence Walters, what's an e-wallet?

LAWRENCE WALTERS: And that's what your guest was referring to. The e-wallets are essentially an electronic placeholder for money to be used on the Internet, something like Neteller will operate by setting up an account that you can put money in, electronic money, and then use that money for a variety of services or products to be used by any other merchant that accepts that money.

So what I can do is I can set up one of these accounts. I can fund it. And then I can use that money to gamble online.

Now, what this legislation does is it says, "Well, Neteller and you e-wallets, you have to somehow identify what this money is going to be used for once the consumer puts the money in the e-wallet."

I don't know how they're going to possibly do that, because I can make the decision a split second before I transfer the funds to an Internet Web site. And there's no way that an e-wallet provider is going to know what I'm going to do with that money ahead of time. It's going to fairly difficult.

RAY SUAREZ: So this law doesn't make it illegal for a credit card company or a bank cashing a check to put money in an e-wallet, this placeholder for money?

LAWRENCE WALTERS: Well, only if the service provider knows that the purpose of the funds is going to be Internet gambling, and that's going to be fairly difficult to show.

## Putting a 'box' on online betting

RAY SUAREZ: Keith Whyte, is part of the problem the fact that the Web is the World Wide Web and, when you're doing things there, you're not in any particular place? I mean, if you put money in an e-wallet so you can gamble on a site that's in the Caribbean island of Antigua, where is the money? Where does it exist?

KEITH WHYTE: Yes, it further raises the question that we think about gambling in these 18th-century terms, these 18th-century boxes, that not only is, you know, gambling legal in one state and not another, but the different forms are legal in different states. And we've placed a premium on that: You know, casinos are legal in Nevada, but not in Utah.

The Internet makes a mockery of these distinctions in law. It makes a mockery of the way we try and keep gambling in these boxes and think about them in these comfortable terms. The Internet has allowed us to do gambling anywhere, any time, on any forum. And, frankly, our 18th-century views and laws of gambling are really going to need to catch up with the 21st-century ways of communication.

So, yes, to your point, it's very hard to determine legally or policy matter where your gamble is taking place, if it takes place in the United States, if it takes place on a server in Bermuda, or if it takes place in Antigua, and whose law should apply.

## Prohibition or treatment?

RAY SUAREZ: Well, you come from an organization on problem gambling, studying problem gambling. Does this new set of hurdles at least make it harder for addicted gamblers to satisfy their compulsion, their desire for game?

KEITH WHYTE: We certainly think the law does no harm. You know, it's not going to enable to make Internet gambling easier.

But, really, if you're going to try and help somebody with a gambling problem, as many of the backers of this legislation say, making it harder for them is not the solution. It's really -- this is a health issue, and we need funds for prevention education.

It's notable that there's not a single cent appropriated in this bill for prevention, for education, for treatment, or for research. So it's a way of trying to address a very serious health problem on the cheap, quite frankly. And I don't know how this bill would really help someone with a gambling problem.

RAY SUAREZ: Lawrence Walters, very quickly before we go, you've both been talking about how this won't block a lot of people who really want to gamble. Yet, as soon as the bill passed, a lot of businesses pulled up stakes in the United States. Why did they do that then?

LAWRENCE WALTERS: Well, and that's a very interesting point. And to your most recent point, the bill, I think, will do some harm for problem gamblers, because the large companies, that were in the space before, the publicly listed entities that respect American law and have chosen to get out of the field, donated large sums to the problem gambling effort.

And now those industry players are going to be replaced with smaller, less regulated players and providers that don't donate those kinds of funds, don't have the money to do so. And, you know, prohibition has never worked to address any kind of compulsion or addiction. And it isn't going to work here, in fact, it's going to reduce the amount of money that's available for problem gambling programs. So it's a crying shame.

RAY SUAREZ: Lawrence Walters, I'm going to have to stop it there. Thanks a lot for joining us, gentlemen, both.

KEITH WHYTE: Thank you.

LAWRENCE WALTERS: My pleasure.

TRANSMISSION VERIFICATION REPORT

TIME : 05/29/2007 14:02
NAME : J NICOLAS ALBUKERK
FAX  : 17738470330
TEL  : 17738472600
SER.# : 000G4J307743

| DATE,TIME | 05/29 14:01 |
|-----------|-------------|
| FAX NO./NAME | 13127824201 |
| DURATION | 00:01:05 |
| PAGE(S) | 07 |
| RESULT | OK |
| MODE | STANDARD |
|  | ECM |

# WELTMAN, WEINBERG & REIS CO., L.P.A.
### ATTORNEYS AT LAW

**BROOKLYN HTS., OH**
216.739.5100

**BURLINGTON, NJ**
609.914.0437

**CHICAGO, IL**
312.782.9676

**CINCINNATI, OH**
513.723.2200

**CLEVELAND, OH**
216.685.1000

**COLUMBUS, OH**
614.228.7272

**DETROIT, MI**
248.362.6100

**GROVE CITY, OH**
614.801.2600

**PHILADELPHIA, PA**
215.599.1500

**PITTSBURGH, PA**
412.434.7955



**JEFFREY M. FEINGOLD**
Managing Attorney
312.782.9676, Ext. 29821
312.782.4201 (Fax)
jfeingold@weltman.com

April 11, 2007

J. Nicolas Albukerk
VIA FACSIMILE
1-773-847-0330

Re: Capital One Bank
Vs: Mario K. Kasalo

Case No: 06-M1-195014
WWR# 05525728

Dear Mr. Alburkerk:

I am in receipt of your correspondence regarding this matter. In this regard, I have requested that my client forward a copy of the signed application and media supporting the charges against the account. Once received I shall forward the same to your attention.

I note that the debtor has not been served and therefore a date is not pending in this case. I shall refrain from issuing the alias until you and your client have had an opportunity to review the documentation. I have also conveyed the settlement proposal and the information that your client states this debt results from an online gambling transaction. I did leave a message for you and hope to be able to speak to you personally concerning this matter. Please contact me at the telephone below.

This law firm is a debt collector attempting to collect this debt for our client and any information obtained will be used for that purpose.

Very truly yours,

Weltman, Wineberg & Reis Co LPA

By: Jeffrey M. Feingold

FEI/cca

# WELTMAN, WEINBERG & REIS CO., L.P.A.

ATTORNEYS AT LAW
10 South LaSalle Street, Suite 900
Chicago, Il 60603
Main Phone: 312.782.9676
Fax Number: 312.782.4201
www.weltman.com

# Fax Transmittal



| | |
|---|---|
| Date: Tuesday, May 29, 2007 | No. of Pages (including cover sheet: _____ |
| To: J. Nicolas Albukerk | Fax Number: 773-847-0330 |
| From: John Pucin | Direct Line: 312-782-9676 Ext. 3 |

## Comments

RE: Mario Kasalo   5525728

Attached please find the requested copy of the complaint. Please contact me if you need anything further.

Brooklyn Hts., OH ♦ Burlington, NJ ♦ Cincinnati, OH ♦ Cleveland, OH ♦ Columbus, OH ♦ Detroit, MI ♦ Grove City, OH ♦ Philadelphia, PA ♦ Pittsburgh,
PA

## CONFIDENTIALITY NOTICE

The documents accompanying this telecopy transmission contain confidential information belonging to the sender which is legally privileged. This information is intended only for the use of the individual or entity named above. If you are not the intended recipient, you are hereby _____ing, distribution or the taking of any _____ance on the contents of this telecop_____hibited. If you have received this _____error, please immediately notify us by _____ of the original documents to us.

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
MUNICIPAL DEPARTMENT, FIRST DISTRICT

CAPITAL ONE BANK

     Plaintiff,

v.

MARIO K KASALO

     Defendant,

No.

Amount Claimed: $3,162.29

Return Date: JANUARY 09, 2007

## COMPLAINT

**NOW COMES**, Plaintiff, and claims as follows:

1. That CAPITAL ONE BANK ("Plaintiff") is a corporation duly licensed to transact business in the state of Illinois.

2. That Plaintiff issued credit card number 4121741861715071 to the Defendant (s) accepting by the use thereof, the terms of the card holder agreement.

3. That the Defendant (s) caused various charges to be made pursuant to the issuance thereof, and are indebted to Plaintiff in the sum of $2812.29, plus attorneys fees in the amount of $350.00, making a total of $3,162.29 . That there is an account stated; Defendant (s) although often requested, have failed and refused to pay said principal amount.

**WHEREFORE**, Plaintiff prays for judgment against the Defendant (s) in the sum of $3,162.29 , plus interest and costs of suit, as provided by statute.

BY: _____

              **Attorney for Plaintiff**

WELTMAN, WEINBERG & REIS CO., L.P.A.

10 South LaSalle, Suit 900

Chicago, Illinois 60603

(312) 782-9676

Atty. No. 31495

THE LAW OFFICES OF

# J. NICOLAS ALBUKERK
3026 W. 26ᵗʰ ST., FL.2
CHICAGO, ILLINOIS 60623
TEL: 773.847.2600
FAX: 773.847.0330
E-MAIL: NICK@ALBUKERK.COM

J. NICOLAS ALBUKERK

OF COUNSEL
KAMELI & ASSOCIATES

---

April 5, 2007

**VIA FACSIMILE 312-782-4201 and U.S. MAIL**

**ATTN: Jay Levy**
**Law Offices of Weltman, Weinberg and Reis**
**10 S LaSalle, Ste 900**
**Chicago, Illinois**

**RE: Complaint # 2006 M1 195014**
**CLIENT: Mario Kris Kasalo**

Dear Mr. Levy:

Please be advised that this firm represents the above-named client for the account listed above. As of the date of this letter, this firm has sent a total of six (6) communications, to both your Ohio and Chicago offices, disputing the validity of the debt referenced above. To date, no response has been received by this Office, nor by my client.

Simply put, the facts that have led to the filing of your Complaint do not support any cause of action against my client. First, as indicated by the attached letter sent by Capital One dated March 15, 2001, this debt stemmed from credit card number theft that was properly reported to Capital One. This was not a debt incurred by my client. Second, even if it were incurred by my client, Capital One's own agents have indicated that the debt was owed to an offshore online gambling website, and processed on their behalf. As you know, **and as we have repeatedly attempted to inform you,** by virtue of statute, all gambling or wagering contracts are void in Illinois. Moreover, it is well-settled that online gambling takes place where the gambler is situated. Thus, even assuming, *but not conceding,* that my client did incur this debt, the fact that it was incurred in Illinois renders it *void ab initio.* Accordingly, since there can be no valid gambling or wagering contract in Illinois, you are impermissibly attempting to collect on a void debt. (see 720 ILCS 5/28-7(a)).

Moreover, please also be advised that even if my client were to willingly pay the purported debt you are claiming he owes, by operation of Illinois law he could immediately seek to recover three times the amount paid to your client, Capital One. Since it is well known that Capital One accepted a percentage of all payments it would process on behalf of its offshore gambling partners, this amount could be rightfully sought from your client. (see 720 ILCS 5/28-8).



THE LAW OFFICES OF
# J. NICOLAS ALBUKERK
3025 W. 26TH ST., FL.2
CHICAGO, ILLINOIS 60623
TEL: 773.847.2600
FAX: 773.847.0330
E-MAIL: NICK@ALBUKERK.COM

J. NICOLAS ALBUKERK

OF COUNSEL
KAMELI & ASSOCIATES

Further be advised that your firm has not complied with the FDCPA requirement that you verify—and submit proof of said verification—in response to a dispute regarding the validity of this debt. As you know, this debt was first disputed with **your** firm on January 8, 2007. On that date, a copy of a letter of dispute was faxed and sent to both your Ohio and Illinois offices. Since neither this Office nor my client has received verification of the purported debt, you have not complied with the 30 day requirement imposed by the Act, and are in breach thereof. You have also impermissibly damaged my client's credit, and have thus also violated various provisions of the FCRA.

Also be aware that your firm has committed an ongoing violation of Illinois Supreme Court Rule 137, as your Complaint is neither well-grounded in fact nor warranted by existing law. By your actions, you are also committing ongoing violations of Rules 1.2 (d)(f), 3.3 (a) and (b), and 8.4 of the Illinois Rules of Professional Conduct. In addition, your continued litigation of this case with "blinders" in an apparent attempt to get a default, and your continued efforts to serve Mr. Kasalo at locations where he is unlikely to be found, both exhibit the appearance of impropriety. Since you recently—albeit impermissibly— pulled Mr. Kasalo's credit report **twice**, on successive days, you should know where he lives, and should serve him accordingly.

In light of these circumstances of serious misconduct, I believe a trial court would award Mr. Kasalo the damages he justly deserves. Since the purported debt you are attempting to collect is void, the only question remaining is the amount of damages my client would be willing to accept as a result of the foregoing misconduct. Thus, in lieu of filing a Counterclaim, FCRA and FDCPA Complaints, my client would agree to accept a payment of $1000.00, in addition to the cancellation of the debt referenced above, to settle this claim. This offer will remain open until April 10, 2007. If I do not hear from you by that date, I will proceed as indicated.

Please govern yourself accordingly,

J. Nicolas Albukerk, Esq.

CC: Capital One Legal Department
JNA/mk
Enclosure

**ORDER**                                    CCG N002-300M-2/28/05(43480658)

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

CAPITOL ONE

v.

No. 06 M1 195014

M. KASALO

**ORDER**

This matter coming to be heard on a motion to strike
and dismiss π's complaint, due notice having
been given & the court being fully appraised in
the premises

1. a motion to strike & dismiss Denied
2. a request for atty fees reserved
3. a granted leave to file amended complaint (28 days)
4. a granted leave to file amended counter claim (28 days)
5. a motion to file 3rd party action against π π π Denied
6. a motion to deem admitted E & C.
7. a granted additional 28 days to respond to request to admit facts
   over D obj.
8. status: 11-6-07   #1102   9:30 am

Atty. No.: _____

Name: _____

Atty. for: _____

Address: _____

City/State/Zip: _____

Telephone: _____

**ENTERED:**

Judge Pamela E. Hill Veal

Dated: ___ SEP 1 7 2007 ___

Circuit Court - 1898

Judge: _____   Judge's No.

**DOROTHY BROWN, CLERK OF THE CIRCUIT ▮▮▮▮ COUNTY, ILLINOIS**

WWR # 05525728

## IN THE CIRCUIT COURT COOK COUNTY, ILLINOIS
## MUNICIPAL DEPARTMENT, FIRST DISTRICT

| | | |
|---|---|---|
| Capital One Bank, | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: 06 M1 195014 |
| | ) | |
| v. | ) | Amount Claimed: $2,671.58 |
| | ) | |
| Mario K. Kasalo, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

### AMENDED COMPLAINT

Now comes Plaintiff, Capital One Bank, by and through its attorneys, Weltman,

Weinberg & Reis Co., L.P.A., and complains of Defendant, Mario K. Kasalo, as follows:

1.      Plaintiff is a New York corporation duly authorized to transact business in the

State of Illinois.

2.      Defendant is a resident of Cook County, Illinois.

3.      Defendant applied for a Capital One Bank credit card account with Plaintiff on or

about January 17, 2000.  A copy of Defendant's application is attached hereto, and made a part

hereof by reference, as Exhibit "1."  Defendant's application was accepted, and Plaintiff

extended credit to Defendant on or about January 28, 2000 under the original credit card number

412174-1653186200.

4.      By use of the account, Defendant acknowledged and became bound by the terms

and conditions contained in the Cardholder Agreement (hereinafter "Agreement").  A copy of

said Cardholder Agreement is attached hereto, and made a part hereof by reference, as Exhibit

"2."

1

5.    Defendant made various purchases and/or cash advances on said account beginning in 2000 through 2001, and failed to pay for the same. True and correct copies of Defendant's Statement of Accounts are attached hereto, and made a part hereof, as Group Exhibit "3."

6.    Plaintiff has exercised its rights pursuant to the terms and conditions of said Agreement to accelerate the time for payment of the entire balance due and owing by Defendant to Plaintiff.

7.    As indicated in the last monthly statement of account dated October 20, 2001, the total outstanding balance on Defendant's account was $1,440.27. This includes all proper credits, including those credits applied on February 2nd, 14th, 16th, and 18th 2001 for the transactions dated January 22, 2001 through January 25, 2001. Plaintiff also waives any collection efforts for the transaction dated February 8, 2001 in the amount of $300.00. As a result of Defendant's breach of the terms and conditions set forth in the Agreement, Plaintiff has been damaged in the amount of $1,140.27.

8.    Per the terms of the Cardholder Agreement, Plaintiff is entitled to impose finance charges on the outstanding principal balance. As of the last monthly statement of account dated October 20, 2001 the applicable interest rate was 17.3%.

9.    At the simple interest rate of 17.3%, Plaintiff avers that the total outstanding accrued interest as of October 15, 2007 is $1,181.31.

10.    Plaintiff avers that the Agreement also provides for the collection of reasonable attorneys' fees, court costs, and collection costs incurred by Plaintiff as a result of Defendant's default.

11.    Plaintiff avers that such attorneys' fees amount to $350.00.

12.    Although demand has been made upon Defendant to liquidate the balance due and owing, the Defendant has failed or refused to do so.

WHEREFORE, Plaintiff Capital One Bank requests judgment in its favor and against Defendant Mario K. Kasalo in the amount of $2,321.58 plus $350.00 in attorney fees, for a total amount of $2,671.58 together with lawful pre-judgment interest and court costs.

Respectfully submitted,

Capital One Bank

One of Plaintiff's Attorneys

Weltman Weinberg & Reis Co., L.P.A.
180 N. LaSalle Street, Suite 2400
Chicago, IL 60601
Telephone: 312-782-9676
Facsimile: 312-782-4201
Attorney No.: 31495

**This law firm is a debt collector attempting to collect this debt for our client and any information obtained will be used for that purpose.**

Limit:                          $25,000.00
Past Due:                       $0.00
Payment
Status:                         Paid or paying as agreed
Comments:

**24-Month Payment History**

| Date: | Jun 05 | Jul 05 | Aug 05 | Sep 05 | Oct 05 | Nov 05 | Dec 05 | Jan 06 | Feb 06 | Mar 06 | Apr 06 | May 06 | Jun 06 | Jul 06 | Aug 06 | Sep 06 | Oct 06 | Nov 06 | Dec 06 | Jan 07 | Feb 07 | Mar 07 | Apr 07 | May 07 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Experian:** | | | | | | | | | | | | | | | | | | | | | | | | |
| **Equifax:** | | | | | | | | | | | | | | | | | | | | | | | | |
| **TransUnion:** | ND | ND | ND | ND | ND | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK |

**CAPITAL ONE**

|  | EXPERIAN | EQUIFAX | TRANSUNION |
|---|---|---|---|
| Account Name: | CAP ONE BK | CAPITAL ONE | |
| Account Number: | 41217418XXXX | 41217418XXXX | |
| Acct Type: | Credit Card - Revolving Terms | Revolving or Option | |
| Acct Status: | Closed | Closed | |
| Monthly Payment: | | | |
| Date Open: | 1/1/2000 | 1/1/2000 | |
| Balance: | $3,107.00 | $3,107.00 | |
| Terms: | Revolving | | |
| High Balance: | $3,107.00 | $1,487.00 | |
| Limit: | | | |
| Past Due: | $3,107.00 | $3,107.00 | |
| Payment Status: | Charge-off | Bad debt & placed for collection & skip | |
| Comments: | Credit line closed-grantor request-reported by subscriber | CHARGED OFF ACCOUNT ACCOUNT CLOSED BY CREDIT GRANTOR | |

**24-Month Payment History**

| Date: | May 05 | Jun 05 | Jul 05 | Aug 05 | Sep 05 | Oct 05 | Nov 05 | Dec 05 | Jan 06 | Feb 06 | Mar 06 | Apr 06 | May 06 | Jun 06 | Jul 06 | Aug 06 | Sep 06 | Oct 06 | Nov 06 | Dec 06 | Jan 07 | Feb 07 | Mar 07 | Apr 07 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Experian:** | CO | CO | CO | CO | CO | CO | CO | CO | ND | CO | CO | CO | CO | CO | CO | CO | CO | CO | CO | CO | CO | CO | CO | CO |
| **Equifax:** | CO | CO | CO | CO | CO | CO | CO | CO | OK | CO | CO | CO | CO | CO | CO | CO | CO | CO | CO | CO | CO | CO | CO | CO |
| **TransUnion:** | | | | | | | | | | | | | | | | | | | | | | | | |

**CAPITAL ONE**

|  | EXPERIAN | EQUIFAX | TRANSUNION |
|---|---|---|---|
| Account Name: | CAP ONE BK | CAPITAL ONE | |
| Account Number: | 48623623XXXX | 48623623XXXX | |
| Acct Type: | Credit Card - Revolving Terms | Revolving or Option | |
| Acct Status: | Open | Open | |
| Monthly Payment: | $15.00 | $15.00 | |
| Date Open: | 10/1/2003 | 10/1/2003 | |
| Balance: | $130.00 | $130.00 | |
| Terms: | Revolving | | |
| High Balance: | $376.00 | $376.00 | |
| Limit: | | | |
| Past Due: | | $0.00 | |
| Payment Status: | Current, was past due 30 days | Pays account as agreed | |
| Comments: | | CREDIT CARD | |



|  | TransUnion | Experian | Equifax |
|---|---|---|---|
|  |  | 0660** |  |
| ...n: |  | Transferred |  |
| ...e: |  | $0 |  |
| ...Status: |  | Charge account |  |
|  |  | Unknown |  |

**...o-Year payment history**

| TransUnion | NONE REPORTED |
| Experian | |
| Equifax | NONE REPORTED |

sep oct nov dec '97 feb mar apr may jun jul aug sep oct nov dec '98 feb mar apr may jun jul aug

---

## CAP 1 BANK

|  | TransUnion | Experian | Equifax |
|---|---|---|---|
| Account #: |  |  | 41217418**** |
| Condition: |  |  | Derogatory |
| Balance: |  |  | $3298 |
| Type: |  |  |  |
| Pay Status: |  |  | Collection/Chargeoff |

**Two-Year payment history**

| TransUnion | NONE REPORTED |
| Experian | NONE REPORTED |
| Equifax | |

feb mar apr may jun jul aug sep oct nov dec '07 feb mar apr may jun jul aug sep oct nov dec '08

---

## CAP 1 BANK

|  | TransUnion | Experian | Equifax |
|---|---|---|---|
| Account #: |  |  | 41217416**** |
| Condition: |  |  | Closed |
| Balance: |  |  | $0 |
| Type: |  |  |  |
| Pay Status: |  |  | Current |

**Two-Year payment history**

| TransUnion | NONE REPORTED |
| Experian | NONE REPORTED |
| Equifax | |

aug sep oct nov dec '02 feb mar apr may jun jul aug sep oct nov dec '03 feb mar apr may jun jul

---

## CITI

|  | TransUnion | Experian | Equifax |
|---|---|---|---|
| Account #: | 54241807**** | 54241807**** | 54241807**** |
| Condition: | Open | Open | Open |
| Balance: | $12767 | $12767 | $12767 |
| Type: | Credit Card | Credit Card | Credit Card |
| Pay Status: | Current | Current | Current |

**Two-Year payment history**

TransUnion

OK OK OK OK OK OK OK OK OK OK OK OK

'06 feb mar apr may jun jul aug sep oct nov dec '07 feb mar apr may jun jul aug sep oct nov dec

OK OK OK OK OK OK OK OK OK OK OK OK

*More about* **CAP 1 BANK**

close window

|  | TransUnion | Experian | Equifax |
|---|---|---|---|
| Past Due: |  |  | $3298 |
| High Balance: |  |  | $1487 |
| Terms: |  |  | 0 |
| Limit: |  |  | $0 |
| Payment: |  |  | $0 |
| Opened: |  |  | 01/01/2000 |
| Reported: |  |  | 02/01/2008 |
| Responsibility: |  |  | Individual |

**Remarks:**
[Equifax]
Charged off account
Accounts closed by credit grantor

**Late Payments (last 7 years):**

|  | TransUnion | Experian | Equifax |
|---|---|---|---|
| 30 |  |  | 0 |
| 60 |  |  | 0 |
| 90 |  |  | 0 |



A world of insight

| Logout | Report Summary | Potentially Negative Items | Accounts in Good Standing | Requests for Your Credit History | Personal Information | Your Personal Statement | Get Credit Monitor |
|---|---|---|---|---|---|---|---|

## Potentially Negative Items or Items for Further Review

⚫ What does potentially negative or items for further review mean?

⚫ What if I feel there is a



Experian credit report prepared for
**MARIO K KASALO**

Your report number is
**1655905161**

Report date: **December 31, 2007**

🗝 **Credit Report Toolk**
Print your report
Credit Education
Know your rights
Credit Fraud Center

Add your
Credit Score

GET IT NOW!

**Item Detail**

[ Dispute this ]

**CAP ONE BK**

**Status Details:**
This account is scheduled to continue on record until Feb 2008.
This item was verified on Jun 2007 and remained unchanged.

**Address:**
PO BOX 85015
RICHMOND, VA 23285
(800) 903-3637

**Account Number:**
412174186171....

**Status:**
Account charged off/Past due 180 days. $1,595 written off. $3,234 past due as of Nov 2007.

| | | |
|---|---|---|
| **Date Opened:** 01/2000 | **Type:** Revolving | **Credit Limit:** NA |
| **Date of Status:** 05/2002 | **Terms:** NA | **High Balance:** $3,234 |
| **Reported Since:** 01/2000 | **Monthly Payment:** $0 | **Recent Balance:** $3,234 |
| **Last Reported Date:** 11/2007 | **Responsibility:** Individual | **Recent Payment:** $0 |

**Your Statement:**
NA

[ Add a statem ]

**Creditor's Statement:**
Account closed at credit grantor's request.

My Credit Center > Report View > What-If Actions > What-If Results

# CreditXpert What-if Simulator™

Getting Started | Abo

**WARNING:** You may want to use a fresh credit report, because your report at the credit bureau could significantly different from the one used for these results.

**Results for Experian**
**Mode:** Planning (Timeframe:  1+ month)
**Credit Report Date:** 01/04/2008

## Results

    **Potential score change: +69**

Results based on a credit report that is 17 days old.

- **Potential score change:** Including the effect of time, these actions may cause your credit score to char by 69 point(s).

- **Timeframe:** 1+ month

## Actions

The results for the actions you requested are shown below. Important information about each action is provided with these results. Every action modifies the results of a previous action. Removing actions or performing them in a different order may produce different results.

The following actions were simulated by the Personal What-If Simulator:

| ⊕Add action | # | Action Description |
|---|---|---|
| | 1 | Deleting your CAP ONE BK account (# 412174186171) from the credit report as of the date of the credit report. |
| | 2 | Simulating your account information 1 month(s) after the date of this credit report. All accounts were synchronized with the accounts that were acted upon, and the date of the credit profile w made consistent with the most recent credit information. |

## Accounts

Edit the accounts below, or choose a predefined scenario. Acti_____you click on the "Submit Actions" button. Using the arrows to show or hide an a_____r edits. Clicking or



**CapitalOne**
for
cardholders



NOT A CHECK
No Cash Value

523700-04

MUST BE
RECEIVED BY: **MAR. 31, 2001**

| VALUE UP TO: | **Thirty-five Dollars in FREE Magazine Rewards** | $35.00 |

ISSUED TO:
Indicate any change of address to right.

MARIO K KASALO
1902 W. AINSLIE AVE
APT #1
CHICAGO IL 60640-3320
4121 7418 6171 5071

_signature_
AUTHORIZED SIGNATURE

SPECIMEN • NON-NEGOTIABLE

**IMPORTANT NEWS:** You are entitled to select up to 3 FREE MAGAZINE REWARDS valued up to the amount shown on the Voucher above. Redeem your Voucher right now for any of the Rewards listed on the reverse. Any portion of the maximum Reward value that remains unused will expire and cannot be redeemed for cash or credit. Details on reverse. This Voucher expires 3/31/01. Complete and return it with your Capital One® credit card payment.

**CapitalOne**

VISA ACCOUNT
4121-7418-6171-5071

JAN 21 - FEB 20, 2001
Page 1 of 1

### Account Summary

| | |
|---|---|
| Previous Balance | $220.51 |
| Payments, Credits and Adjustments | $1,020.70 |
| Transactions | $964.00 |
| Finance Charges | $8.56 |
| New Balance | $172.37 |
| Minimum Amount Due | $10.00 |
| Payment Due Date | March 20, 2001 |
| Total Credit Line | $300 |
| Total Available Credit | $127.63 |
| Credit Line for Cash | $300 |
| Available Credit for Cash | $127.63 |

*At your service*
To call Customer Relations or to report a lost or stolen card:
1-800-955-3457

Send payments to:
Attn: Remittance Processing
Capital One Services
P.O. Box 60000
Seattle, WA 98190-6000

Send inquiries to:
Capital One Services
P.O. Box 85015
Richmond, VA 23285-5015

### Payments, Credits and Adjustments

| | | | |
|---|---|---|---|
| 1 | 21 JAN | PAST DUE FEE ADJUSTMENT | $25.00- |
| 2 | 21 JAN | OVERLIMIT FEE ADJUSTMENT | 25.00- |
| 3 | 24 JAN | PAYMENT RECEIVED - THANK YOU | 300.00- |
| 4 | 02 FEB | FRAUD ADJUSTMENT - PURCHASE | 130.00- |
| 5 | 02 FEB | FRAUD ADJUSTMENT - PURCHASE | 80.00- |
| 6 | 02 FEB | FRAUD ADJUSTMENT - PURCHASE | 100.00- |
| 7 | 02 FEB | FRAUD ADJUSTMENT - PURCHASE | 170.00- |
| 8 | 02 FEB | FRAUD ADJUSTMENT - PURCHASE | 45.00- |
| 9 | 02 FEB | FRAUD ADJUSTMENT - PURCHASE | 100.00- |
| 10 | 02 FEB | ADJ- PURCHASE - FINANCE CHARGE | .70- |
| 11 | 14 FEB | ECX CREDIT | 45.00- |

### Transactions

| | DATE | | |
|---|---|---|---|
| 12 | 22 JAN | INTERSAFE GLOBAL MONTREAL PQ | $90.00 |
| 13 | 24 JAN | ECX TORONTO ON | 45.00 |
| 14 | 25 JAN | CFI 24 MONTREAL PQ | 100.00 |
| 15 | 25 JAN | CFI 24 MONTREAL PQ | 170.00 |
| 16 | 25 JAN | CFI 24 MONTREAL PQ | 100.00 |
| 17 | 25 JAN | CFI 24 MONTREAL PQ | 130.00 |
| 18 | 08 FEB | ROMANSOFT LTD 3575866001 | 300.00 |
| 19 | 20 FEB | MEMBERSHIP FEE | 39.00 |
| 20 | 20 FEB | CASH ADVANCE FEE - - FINANCE CHARGE | 7.50 |



As a valued Capital One customer we want you to know that your account number has changed. After you activate your new card, you will need to give your new account number to those merchants with whom you have set up automatic billing. This will ensure that the payments you have arranged will continue to be billed directly to your Capital One card, saving you time and money on postage. Once again, thank you for choosing Capital One.

### Finance Charges

*Please see reverse side for important information*

| | Balance rate applied to | Periodic rate | Corresponding APR | FINANCE CHARGE |
|---|---|---|---|---|
| PURCHASES | 6.20 | .05542% D | 20.20% | 5.00 |
| CASH | 661.35 | .05542% D | 20.20% | 61.06 |

**ANNUAL PERCENTAGE RATE** applied this period    34.24%

20923M

▼ PLEASE RETURN PORTION BELOW WITH PAYMENT. ▼

**CapitalOne**

0000000 0 4121741861715071 00 0172370300000010004

| | |
|---|---|
| New Balance | $172.37 |
| Minimum Amount Due | $10.00 |
| Payment Due Date | March 20, 2001 |
| Total enclosed | $ |

*Please print address changes below using blue or black ink.*

| | | |
|---|---|---|
| Street | | Apt. # |
| City | State | ZIP |
| Home Phone | Alternate Phone | |

Capital One Services
P.O. Box 60000
Seattle, WA 98190-6000



MARIO K KASALO
W. AINSLIE AVE
#1
GO IL 60640-3320

**Capital One** Cardholder, A Premium **KwikStamp** Has Been Reserved For You!

- Refillable ink cartridge
- Use anytime, anywhere
- Limited lifetime warranty
- Self-inking—No more messy ink pads!
- Thousands of clear impressions without re-inking

ONLY $9.90*
plus $2.95 shipping and handling per stamp

☐ Please send me a KwikStamp using my name and address as it appears on my statement and ship to that address. Please charge* my Capital One® account.

Account number: 4121-7418-6171-5071

Customer's Signature _____

Complete back to order additional KwikStamps. • Detach at perforation and return in your remittance envelope.

MARIO K KASALO
1902 W. AINSLIE AVE
APT #1
CHICAGO IL 60640-3320

# Capital One®

**VISA ACCOUNT**
4121-7418-6171-5071

FEB 21 - MAR 20, 2001
Page 1 of 1

## Account Summary

| | |
|---|---|
| Previous Balance | $172.37 |
| Payments, Credits and Adjustments | $580.00 |
| Transactions | $662.76 |
| Finance Charges | $14.64 |
| | |
| New Balance | $269.77 |
| Minimum Amount Due | $10.00 |
| Payment Due Date | April 20, 2001 |
| | |
| Total Credit Line | $300 |
| Total Available Credit | $30.23 |
| Credit Line for Cash | $300 |
| Available Credit for Cash | $30.23 |

At your service
To call Customer Relations or to report a lost or stolen card:
1-800-955-5437

Send payments to:
Attn: Remittance Processing
Capital One Services
P.O. Box 60000
Seattle, WA 98190-6000

Send inquiries to:
Capital One Services
P.O. Box 85015
Richmond, VA 23285-5015

## Important Account Information

**Important Information** Please see the paragraphs entitled "Closing Your Account" and "Using Your Account" on the back of this statement for important information regarding your account.

## Payments, Credits and Adjustments

| | | | |
|---|---|---|---|
| 1 | 16 FEB | CFI 24 CREDIT | $70.00- |
| 2 | 16 FEB | CFI 24 CREDIT | 30.00- |
| 3 | 16 FEB | CFI 24 CREDIT | 100.00- |
| 4 | 16 FEB | CFI 24 CREDIT | 70.00- |
| 5 | 16 FEB | CFI 24 CREDIT | 30.00- |
| 6 | 16 FEB | CFI 24 CREDIT | 100.00- |
| 7 | 16 FEB | CFI 24 CREDIT | 100.00- |
| 8 | 16 FEB | WWW.FIRECASH.COM/67979 CREDIT | 80.00- |

## Transactions

| | DATE | | |
|---|---|---|---|
| 9 | 22 FEB | CCF98CCBILL.COM 888 596 9279 | $4.95 |
| 10 | 24 FEB | CASH BANK ONE W LAWREN CHICAGO IL | 250.00 |
| 11 | 01 MAR | CASH BANK ONE W LAWREN CHICAGO IL | 280.00 |
| 12 | 01 MAR | FURAMA RESTAURANT CHICAGO IL | 18.30 |
| 13 | 10 MAR | LEONA'S CHICAGO IL | 25.72 |
| 14 | 10 MAR | MANDY'S LIQUOR CHICAGO IL | 30.79 |
| 15 | 13 MAR | CHICAGO READER 312-828-0350 IL | 43.00 |
| 16 | 20 MAR | CASH ADVANCE FEE - - FINANCE CHARGE | 13.25 |

Thank you for choosing Capital One...Remember, your account terms may change if your account does not remain in good standing. Any new terms will take effect as stated in your offer within three billing cycles.

## Finance Charges

Please see reverse side for important information

| | Balance rate applied to | Periodic rate | Corresponding APR | FINANCE CHARGE |
|---|---|---|---|---|
| PURCHASES | 0.00 | .05436% D | 19.90% | 0.00 |
| CASH | $91.41 | .05436% D | 19.90% | $1.39 |

ANNUAL PERCENTAGE RATE applied this period    33.15%

36106M

▼ PLEASE RETURN PORTION BELOW WITH PAYMENT. ▼

# Capital One®

0000000 0 4121741861715071 00 0269770300000010009

| | |
|---|---|
| New Balance | $269.77 |
| Minimum Amount Due | $10.00 |
| Payment Due Date | April 20, 2001 |
| | |
| Total enclosed | $ |

Please print address change below using blue or black ink.

| Street | | Apt # |
|---|---|---|
| City | State | ZIP |
| Home Phone | Alternate Phone | |

Capital One Services
P.O. Box 60000
Seattle, WA 98190-6000

036106

MARIO K KASALO
1902 W. AINSLIE AVE
APT #1
CHICAGO IL 60640-3320




Experian

# experian·

| Logout | Report Summary | Potentially Negative Items | Accounts in Good Standing | Requests for Your Credit History | Personal Information | Yo |

## Potentially Negative Items or Items for Further Review

❓ What does potentially negative or items for further review mean?

❓ What if I feel there is an

Experian credit report prepared for
**MARIO KRIS KASALO**

Your report number is
**1904033606**

Report date: **May 11, 2007**

❓ **Credit Report Toolkl**
Print your report
Credit Education
Know your rights
Credit Fraud Center

Item Detail

CAP ONE BK

Dispute th s

**Status Details:**
This account is scheduled to continue on record until Feb 2008.
This item was verified on May 2007 and remained unchanged.
**Address:**
PO BOX 85015
RICHMOND, VA 23285
(800) 903-3637

**Account Number:**
412174186171....

**Status:**
Account charged off/Past due 180 days. $1,595 written off. $3,107 past due as of May 2007.

| | | |
|---|---|---|
| **Date Opened:** 01/2000 | **Type:** Revolving | **Credit Limit:** NA |
| **Date of Status:** 05/2002 | **Terms:** NA | **High Balance:** $3,107 |
| **Reported Since:** 01/2000 | **Monthly Payment:** $0 | **Recent Balance:** $3,107 |
| **Last Reported Date:** 05/2007 | **Responsibility:** Individual | **Recent Payment:** $0 |

**Your Statement:**
NA

**Creditor's Statement:**
Account closed at credit grantor's request

**Account History:**

Charge Off as of May 2007, Apr 2007, Mar 2007, Feb 2007, Jan 2007, Dec 2006, Nov 2006, Oct 20 2006, Aug 2006, Jul 2006, Jun 2006, May 2006, Apr 2006, Mar 2006, Feb 2006, Dec 2005, Nov 200 2005, Sep 2005, Aug 2005, Jul 2005, Jun 2005, May 2005, Jan 2005, Oct 2003 to Dec 2004, Apr 20 2003, Nov 2002, Oct 2002, Aug 2002, Jul 2002, Apr 2002
180 days as of Oct 2001
150 days as of Sep 2001
120 days as of Aug 2001
90 days as of Jul 2001
60 days as of Jun 2001
30 days as of May 2001, Dec 2000

**Balance History:**
04/2007 $3,091
03/2007 $3,036
02/2007 $3,009
01/2007 $2,987
12/2006 $2,753
11/2006 $2,731
10/2006 $2,710
09/2006 $2,689
08/2006 $2,667
07/2006 $2,647
06/2006 $2,625
05/2006 $2,604
04/2006 $2,583
03/2006 $2,563
02/2006 $2,542
12/2005 $2,500
11/2005 $2,478
10/2005 $2,457
09/2005 $2,436
08/2005 $2,414
07/2005 $2,393
06/2005 $2,372
05/2005 $2,351

**Limit High Balance History:**
Between Apr 2007 and Apr 2007, your credit limit/high balance was $3,091
Between Mar 2007 and Mar 2007, your credit limit/high balance was $3,036
Between Feb 2007 and Feb 2007, your credit limit/high balance was $3,009
Between Jan 2007 and Jan 2007, your credit limit/high balance was $2,987
Between Dec 2006 and Dec 2006, your credit limit/high balance was $2,753
Between Nov 2006 and Nov 2006, your credit limit/high balance was $2,731
Between Oct 2006 and Oct 2006, your credit limit/high balance was $2,710
Between Sep 2006 and Sep 2006, your credit limit/high balance was $2,689
Between Aug 2006 and Aug 2006, your credit limit/high balance was $2,667
Between Jul 2006 and Jul 2006, your credit limit/high balance was $2,647
Between Jun 2006 and Jun 2006, your credit limit/high balance was $2,625
Between May 2006 and May 2006, your credit limit/high balance was $2,604
Between Apr 2006 and Apr 2006, your credit limit/high balance was $2,583
Between Mar 2006 and Mar 2006, your credit limit/high balance was $2,563
Between Feb 2006 and Feb 2006, your credit limit/high balance was $2,542
Between Dec 2005 and Dec 2005, your credit limit/high balance was $2,500
Between Nov 2005 and Nov 2005, your credit limit/high balance was $2,478
Between Oct 2005 and Oct 2005, your credit limit/high balance was $2,457
Between Sep 2005 and Sep 2005, your credit limit/high balance was $2,436
Between Aug 2005 and Aug 2005, your credit limit/high balance was $2,414
Between Jul 2005 and Jul 2005, your credit limit/high balance was $2,393
Between Jun 2005 and Jun 2005, your credit limit/high balance was $2,372
Between May 2005 and May 2005, your credit limit/high balance was $2,351

©Experian 2007. All rights reserved.
Experian and the Experian marks herein are service marks or registered trademarks of Experian.



**Experian**
A world of insight

Logout | Report Summary | Potentially Negative Items | Accounts in Good Standing | Requests for Your Credit History | Personal Information | Your Personal Statement | Get Credit Monitor

### Potentially Negative Items or Items for Further Review

● What does potentially negative or items for further review mean?

❓ What if I feel there is a

Experian credit report prepared for
**MARIO K KASALO**

Your report number is
**3536774078**

Report date: **January 16, 2008**

🔧 **Credit Report Tools**
Print your report
Credit Education
Know your rights
Credit Fraud Center

**Add Triple Alert Credit Monitoring**

GET IT NOW!

**Get the Score!**

GET IT NOW!

**Item Detail**

**CAP ONE BK**

Dispute this

**Status Details:**
This account is scheduled to continue on record until Feb 2008.
This item was verified on Jun 2007 and remained unchanged.

**Address:**
PO BOX 85015
RICHMOND, VA 23285
(800) 903-3637

**Account Number:**
412174186171....

**Status:**
Account charged off/Past due 180 days. $1,595 written off. $3,276 past due as of Jan 2008.

**Date Opened:**
01/2000

**Type:**
Revolving

**Credit Limit:**
NA

**Date of Status:**
05/2002

**Terms:**
NA

**High Balance:**
$3,276

**Reported Since:**
01/2000

**Monthly Payment:**
$0

**Recent Balance:**
$3,276

**Last Reported Date:**
01/2008

**Responsibility:**
Individual

**Recent Payment:**
$0

**Your Statement:**
NA

Add a state

**Creditor's Statement:**
Account closed at credit grantor's request.



January 17, 2008

Via Certified Mail

Experian
PO Box 9556
Allen, TX 75013

Dear Sir or Madam:

Please remove the Capital One Bank credit card tradeline that appears on my credit report
for credit card account number 41217418****, reported in the amount of $3276.00. I
have attached a printout from your website, corresponding to report # 4073819146, as
you have previously wrongly verified the information in response to my previous request
for investigation. Please direct Capital One to properly investigate this matter.

The reasons that the information is wrong are as follows:

1.      The negative information has been reported for more than 7 years since first
        reported delinquency ; and

2.      The balance is incorrect.

My info is as follows:

Mario Kris Kasalo
6833 N Kedzie Ave, #1208
Chicago, IL 60645
ss# 347 72 1883
date of birth 04/29/1970

Sincerely,

Mario Kris Kasalo

P.O. Box 105518
Atlanta, GA 30348

February 15, 2008



## EQUIFAX

To Start An Investigation, Please Visit Us At:
www.investigate.equifax.com



000614919-5066
Kris Mario Kasalo
6833 N Kedzie Ave Apt 1208
Chicago, IL 60645-2886

Dear Kris Mario Kasalo:

Below are the results of your request for Equifax to reinvestigate certain elements of your Equifax credit file. Equifax contacted each source directly and our investigation is now completed. If you have any additional questions or concerns, please contact the source of that information directly.

>>> **We have researched the credit account.** Account # - 412174186171* **The results are:** This creditor has verified to Equifax that the balance is being reported correctly. If you have additional questions about this item please contact: **Capital One, PO Box 30281, Salt Lake City, UT 84130-0281**

>>> **We have researched the credit account.** Account # - 412174165318* **The results are:** This item has been deleted from the credit file. If you have additional questions about this item please contact: **Capital One, PO Box 30281, Salt Lake City, UT 84130-0281**

If you have any additional questions regarding the information provided to Equifax by the source of any information, please contact the source of that information directly. You may contact Equifax regarding the specific information contained in this letter within the next 60 days by visiting us at www.investigate.equifax.com.

Thank you for giving Equifax the opportunity to serve you.

### Notice to Consumers

Upon receipt of your _____ _____ _____ information you have submitted regarding the nature of your dispute, including _____ _____ _____ further investigation is required, _____ your dispute, including _____ _____ _____ to the source that furnished _____ information. The source _____ _____ _____ investigation with respect to the disputed information and reports the results back to us. The credit report agency then makes deletions or changes to your credit file as appropriate based on the results of the reinvestigation. The name, address and, if reasonably available, the telephone number of the furnisher(s) of the information contacted while processing your dispute(s) is shown under the "Results of Your Investigation" section on the cover letter that accompanies the copy of your revised credit file.

If you still disagree with an item after it has been verified _____ _____ hundred words (two hundred words for Maine residents) _____ become part of your credit file and will be disclosed _____ _____

_____ the reinvestigation results in a change to or deletion of the _____ _____ element in accordance with the preceding paragraph, you have the _____ _____ any company that received your credit file in the past six months (twelve _____ _____ _____ and, New Jersey and New York residents) for any purpose or in the past two years for employment purposes.



**Account Number** #1217418I6171*

| Date Opened | High Credit | Credit Limit | Terms Duration | Terms Frequency | Date of 1st Delinquency | Date of Last Activity | Mths Revd | Activity Description | Creditor Classification |
|---|---|---|---|---|---|---|---|---|---|
| 01/2000 | | $300 | | Monthly | | | 1 | Closed | |

| Items As of Date Reported | Balance Amount | Amount Past Due | Scheduled Payment Amount | Actual Payment Amount | Date of Last Payment | Date Maj. Del. 1st Paid | Charge Off Amount | Deferred Pay Start Date | Balloon Pay Start Date | Balloon Pay Amount | Balloon Pay Date | Date Closed |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 02/2008 | $3,298 | $3,298 | | | | 01/2008 | $1,497 | | | | | |

Current Status - Charge Off; Type of Account - Revolving; Type of Loan - Credit Card; Whose Account - Individual Account; ADDITIONAL INFORMATION - Consumer Disputes - Reinvestigation in Process;

**Account History** 01/2008
**with Status Codes** L

---

**Account Number** 517805255631*

| Date Opened | High Credit | Credit Limit | Terms Duration | Terms Frequency | Date of 1st Delinquency | Date of Last Activity | Mths Revd | Activity Description | Creditor Classification |
|---|---|---|---|---|---|---|---|---|---|
| 08/2004 | $428 | $300 | | Monthly | | 11/2007 | 40 | | |

| Items As of Date Reported | Balance Amount | Amount Past Due | Scheduled Payment Amount | Actual Payment Amount | Date of Last Payment | Date Maj. Del. 1st Paid | Charge Off Amount | Deferred Pay Start Date | Balloon Pay Start Date | Balloon Pay Amount | Balloon Pay Date | Date Closed |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 01/2008 | $0 | | | $47 | 11/2007 | | | | | | | |

Current Status - Pays As Agreed; Type of Account - Revolving; Type of Loan - Credit Card; Whose Account - Individual Account; ADDITIONAL INFORMATION - Credit Card; Amount in High Credit Column is Credit Limit;

**Account History** 11/2006
**with Status Codes** †

---

**Account Number** 588896413155*

| Date Opened | High Credit | Credit Limit | Terms Duration | Terms Frequency | Date of 1st Delinquency | Date of Last Activity | Mths Revd | Activity Description | Creditor Classification |
|---|---|---|---|---|---|---|---|---|---|
| 11/2002 | $1,369 | $2,700 | | Monthly | | 12/2007 | 32 | Paid and Closed | |

| Items As of Date Reported | Balance Amount | Amount Past Due | Scheduled Payment Amount | Actual Payment Amount | Date of Last Payment | Date Maj. Del. 1st Paid | Charge Off Amount | Deferred Pay Start Date | Balloon Pay Start Date | Balloon Pay Amount | Balloon Pay Date | Date Closed |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 01/2008 | $6,323 | | | $615 | 12/2007 | | | | | | | 05/2007 |

Current Status - Pays As Agreed; Type of Account - Revolving; Type of Loan - Credit Card; Whose Account - Authorized User; ADDITIONAL INFORMATION - Account Closed At Consumers Request; Closed or Paid Account/Zero Balance; Credit Card;

---

**Account Number** 549092578012*

| Date Opened | High Credit | Credit Limit | Terms Duration | Terms Frequency | Date of 1st Delinquency | Date of Last Activity | Mths Revd | Activity Description | Creditor Classification |
|---|---|---|---|---|---|---|---|---|---|
| 05/2003 | $6,323 | $6,900 | | Monthly | | 01/2008 | 55 | | |

| Items As of Date Reported | Balance Amount | Amount Past Due | Scheduled Payment Amount | Actual Payment Amount | Date of Last Payment | Date Maj. Del. 1st Paid | Charge Off Amount | Deferred Pay Start Date | Balloon Pay Start Date | Balloon Pay Amount | Balloon Pay Date | Date Closed |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 01/2008 | $5,124 | | $103 | $600 | 01/2008 | | | | | | | |

Current Status - Pays As Agreed; Type of Account - Revolving; Type of Loan - Credit Card; Whose Account - Authorized User; ADDITIONAL INFORMATION - Credit Card; Amount in High Credit Column is Credit Limit;

---

**Account Number** 542418071741*

| Date Opened | High Credit | Credit Limit | Terms Duration | Terms Frequency | Date of 1st Delinquency | Date of Last Activity | Mths Revd | Activity Description | Creditor Classification |
|---|---|---|---|---|---|---|---|---|---|
| 02/2007 | $0 | $16,000 | | Monthly | | 12/2007 | 11 | | |

| Items As of Date Reported | Balance Amount | Amount Past Due | Scheduled Payment Amount | Actual Payment Amount | Date of Last Payment | Date Maj. Del. 1st Paid | Charge Off Amount | Deferred Pay Start Date | Balloon Pay Start Date | Balloon Pay Amount | Balloon Pay Date | Date Closed |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 01/2008 | $12,767 | | $191 | | | | | | | | | |

Current Status - Pays As Agreed; Type of Account - Revolving; Type of Loan - Credit Card; Whose Account - Authorized User; ADDITIONAL INFORMATION - Credit Card; Amount in High Credit Column is Credit Limit;

( ext Page )